**STATE of Tennessee, Plaintiff-Appellee,**

**v.**

**William Edward GROSECLOSE and Ronald Eugene Rickman, Defendants-Appellants.**

Supreme Court of Tennessee.

Feb. 17, 1981.

Petition to Rehear Feb. 27, 1981.

Petition Denied April 27, 1981.

William M. Leech, Jr., Atty. Gen. & Reporter, Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, for plaintiff-appellee.

Larry D. Woods and Lionel R. Barrett, Jr., Nashville, for defendants-appellants.

## OPINION

HARBISON, Justice.

Appellants William Edward Groseclose and Ronald Eugene Rickman appeal from their convictions of murder in the first degree and a sentence of death pursuant thereto. A codefendant who was tried and convicted with them, Phillip Michael Britt, was sentenced to life imprisonment. His case is not involved in the present appeal.

After careful consideration of the assignments of error made on behalf of appellants and of the entire record, we are of the opinion that the verdict and sentence are sustained by the evidence and that no reversible error was committed at the very lengthy trial out of which these appeals arise.

Appellants were convicted for the murder of Deborah Lee Groseclose on or about June 29, 1977. The victim was the wife of appellant William Edward Groseclose.

Jury selection began in this case on February 13, 1978, and was completed on February 17. After pleas of not guilty by all defendants, trial commenced on February 18, 1978, and was concluded on February 28. The sentencing hearing consumed from March 1 through March 3. None of the defendants testified before the jury at the guilt phase of the hearing. The State presented thirty-nine witnesses during that portion of the trial. The resulting record was voluminous, and there were, of course, some discrepancies and conflicts in the testimony. There was material evidence presented to the jury, however, to support the following statement of the essential facts.

Mr. and Mrs. Groseclose were married in April, 1975. They had been experiencing marital difficulties for some time prior to her death. They had been separated for about two weeks, during a part of which Mr. Groseclose visited his mother in Kingsport, Tennessee. Mr. Groseclose was twenty-nine years of age in June 1977; his wife was twenty-four. He had served in the Navy for several years. Prior to his wife's death he had been employed in the Navy Recruiting Service. It was there that he had become acquainted with several of the other persons involved in the homicide.

Mr. Groseclose was discharged from his employment on June 16, 1977, because of serious irregularities in his enlisting of recruits. His wife was employed as a receptionist for a group of physicians. Shortly after their marriage Mr. Groseclose had obtained a substantial amount of insurance on the life of his wife.

For several weeks prior to the actual homicide, Mr. Groseclose planned the death of the victim. His motives may have been apprehension that she was about to sue him for divorce, desire to obtain the life insurance proceeds, or interest in another woman. There is evidence in the record to suggest all of these as possibilities. In all events, he contacted one of his former recruits, Barton Wayne Mount, in an effort to employ someone to murder Mrs. Groseclose.

Mount placed him in touch with his codefendant Britt, a nineteen-year-old boy. Britt contacted his former brother-in-law, appellant Rickman. Ultimately, with the knowledge and participation of Britt and Mount, Rickman agreed to perform the act for a specified and negotiated price. Britt was to share in the proceeds. Groseclose also promised to reward Mount thereafter.

Mount was indicted with the other three defendants. His case, however, was severed and he testified for the State at the trial. His testimony was devastating to all three defendants. Although he was cross-examined at length by counsel for all defendants, his testimony clearly showed that the homicide was committed by Rickman and Britt on behalf of and after being procured by Groseclose.

Also testifying for the State was Pamela Baker Lindsey, who at the time of the homicide was living in an apartment with Rickman and with one Donnie Tatum. Mrs. Lindsey was never indicted in connection with the death of Mrs. Groseclose. In her testimony, she described in detail a meeting between the participants and Mr. Groseclose, as well as the planning and the aftermath of the murder. Shortly after it was committed, she assisted Rickman in shaving his hair, altering his beard, and materially changing his appearance. She and Rickman fled to Oklahoma where Rickman was arrested about one week after the body of Mrs. Groseclose was discovered.

The murder was one of the most atrocious and inhuman conceivable. Although there are different versions and conflicting evidence on the point, it appears that there was a plan for Rickman to accost Mrs. Groseclose on the afternoon of June 28 and to frighten her to the point that she would report to the incident to the police. She was then to be murdered on the next day, the plan being that suspicion would be diverted from her husband by the previous incident. Whether planned or not, this in fact occurred, and Rickman approached Mrs. Groseclose on the parking lot near the place of her employment. When she would not talk with him, he followed her home in another automobile, greatly alarming her. There is no question but that she was frightened and that she did report the incident to the police in the evening of June 28, 1977. She also reported it to other persons, including her husband, apparently having no suspicion of his involvement.

According to plan, Mr. Groseclose left his residence early on the morning of June 29, taking his infant son with him. He left the back door to the residence unlocked, although he had previously supplied a key for use by the murderers in the event they had difficulty obtaining access to the house. Rickman and Britt went to the residence at about 5 or 5:30 in the morning and waited in a workshop near the home until Mr. Groseclose left. They then entered the house. Each had sexual relations with Mrs. Groseclose. They then permitted her to bathe and dress, during which process Rickman advised her that there was a "contract" on her life. According to the phrase used by both Britt and Rickman, the terrified woman "plea bargained" with her attackers and offered to try to get money for them. This offer was refused, and Rickman proceeded to strangle Mrs. Groseclose into unconsciousness. Whether Britt participated in this act or not is unclear from the proof. He said that he did not, although at one point he admitted having held the hands of Mrs. Groseclose briefly while she was struggling with Rickman, who had seized her from behind. In all events, apparently still detecting a pulse after the victim had been rendered unconscious, Rickman stabbed her three or four times in the back near the spinal cord. Thinking their victim to be dead, Rickman and Britt then placed her body in the trunk of her automobile and drove the vehicle to a parking lot adjacent to the main Memphis Public Library. During this trip, Rickman became aware that the victim was not dead, and in a statement later introduced he said that he and Britt could hear her cries for help from the trunk. Britt denied this and said that he could not recall having heard any outcry from the victim.

In all events, the victim was left locked in the trunk of her automobile in the broiling sun from about 9 a. m. on June 29 until her badly decomposed body was discovered therein during the early afternoon of July 4—a period of some five days. Medical testimony revealed that the injuries which had been inflicted on Mrs. Groseclose by Rickman would not have been fatal and that she died from the excessive heat in the trunk of the automobile (systemic hyperthermia).

Mr. Groseclose reported his wife missing during the day of June 29 and went through a pretense of searching for her during the next several days. The perpetrators, Britt and Rickman, met with him and told him that their mission had been accomplished. He had withdrawn funds from a bank account on the night of June 28 in order to make a partial payment to Rickman and was to pay the balance when he collected the proceeds of the insurance policies on his wife.

Rickman and Pamela Lindsey had been living in an apartment rented by one Donnie Tatum. Police began an extensive investigation into this homicide after the ghastly discovery of the victim on July 4. They interviewed Tatum and Mount, and the entire scheme came to light. Within a week after the homicide most of the principal participants were in custody. Tatum gave a detailed statement to the police, which was consistent with that later given by Mrs. Lindsey and by Britt and generally consistent with one also given by Rickman. After a full suppression hearing, the statements of both Britt and Rickman, in redacted form, were admitted into evidence and read to the jury. Later, at the sentencing hearing, their unredacted statements were read in full.

■ Further discussion of the facts is unnecessary, except as relevant to specific assignments of error. There was overwhelming proof of the guilt of all three of the defendants, and the assignments of error challenging sufficiency of the evidence are overruled.

■ Also without merit is an assignment challenging the admissibility of two photographs of the body of the victim on the ground of their gruesomeness and prejudicial effect. These were apparently polaroid snapshots, taken at a distance of several feet, and show very little detail, other than the actual location of the body. Their contents do not approach the gruesomeness of the oral testimony given by several eyewitnesses, and they were probative primarily to show the position of the body in the vehicle at the time of its discovery. The photographs were relevant, and their probative value was considerable. We find no error in their admission.

■ Another issue dealing with the proof pertains to the admission in evidence of a grenade detonator through the testimony of Pamela Lindsey. Mrs. Lindsey testified that this detonator was in the possession of Rickman prior to the homicide. Upon objection by counsel for the defense to the admission of the exhibit, the District Attorney stated that its relevance would become apparent when Donnie Tatum testified as a witness.

Tatum was present at the trial and waited for a considerable time before being called as a witness. When he was called, however, defense counsel objected at the outset to any evidence given by him on the ground that he had been granted immunity by the grand jury and that this fact was not made known to counsel prior to the trial. In the face of this objection, the State agreed not to use Tatum as a witness. His signed statement to the police was later filed for the record, and, like the testimony of Mount, it was extremely detrimental to all three defendants. The exclusion of Tatum as a witness was, therefore, of material benefit to the defense. None of the defendants, however, moved to strike the grenade detonator from the record or the testimony of Mrs. Lindsey pertaining thereto. To the contrary, counsel for defendants cross-examined several prosecution witnesses about the grenade detonator, and it was referred to thereafter on several occasions without objection. The initial objection

was never renewed, nor was it mentioned in the motion for new trial after verdict.

It is apparent from an examination of Tatum's statement that had he been permitted to testify, the grenade detonator would have been material, and testimony concerning it would have been detrimental to Rickman. In the statement, Tatum said that when he was first interviewed by the police in his apartment after the homicide Rickman secreted himself in an adjoining closet with the detonator and threatened to destroy himself, Tatum and the investigating officer by activating the detonator if Tatum gave any damaging information to the police. All of this testimony was excluded from consideration by the jury. There was no reversible error in the original admission of the detonator and certainly no prejudicial error to the defendants as a result of the subsequent trial developments. If any error initially occurred in the admission of the detonator, it was at most harmless and must be deemed waived by failure to renew the objection at an appropriate time. Parenthetically, on the sentencing hearing, Rickman admitted possessing the detonator and demonstrated its potential use to the jurors.

Appellants assign as error testimony by a police officer implicating Groseclose after statements given by Britt and Rickman had been ordered redacted and all references in each to any codefendant deleted.

■ The statement by the officer was merely an introductory remark, to which objection was immediately made and sustained. Cautionary instructions were given to the jury. The statement came late in the presentation of the State's proof, long after both Mount and Mrs. Lindsey had testified, directly implicating all of the defendants. Under the circumstances, therefore, the statement by the officer was at most a technical error and was merely cumulative and repetitive to much more damaging testimony on the same subject which had already been admitted without objection. The assignment of error is overruled.

■ Appellants complain of the voir dire examination of the jurors and their qualification with respect to the death penalty. We have examined the record, however, and we do not find that any error was committed by the trial judge in excusing jurors for cause. We further note that appellants did not exhaust their peremptory challenges, and there is no basis for reversal with respect to the examination of the jurors.

■ Likewise without merit are assignments complaining of failure of the court reporter to transcribe the final arguments of counsel. Counsel representing appellants on appeal were not present at the trial. Trial counsel. however, fully approved the transcript of the record on appeal and must be deemed to have approved its abridgement. In the absence of supporting affidavits or other evidence that prejudicial or reversible error occurred during the final summations of counsel, we cannot sustain this assignment.

■ Equally without merit is the complaint that the trial judge failed to complete and to supply a report to the clerk of this Court concerning the defendant Britt. Such a report is required in all cases where the death penalty is submitted to the jury for consideration, whether imposed or not. See Rule 47 of the rules of this Court.

In the present case, reports concerning Groseclose and Rickman were included in the record on appeal, as required by the Rule, but since Britt's case is not involved here, a report concerning him was not included. Such a report was prepared by the trial judge, however, and transmitted to the clerk of this Court under date of April 4, 1978, in compliance with the rule. Accordingly the assignment of error regarding the absence of this report is overruled.

■ Appellants have assigned errors regarding the jury instructions, but from an examination of them we are of the opinion that the instructions given closely followed the Tennessee statutes which the Court has previously held constitutional. One of the principal complaints made in the brief of

appellants was the failure of the trial judge to define the term "mitigating," but we are of the opinion that this is a word in common usage and certainly not a "legalism" beyond the understanding of ordinary citizens composing a jury panel.

■ Appellants also complain of some incidents which occurred during the impaneling of the jury, such as contact of prospective jurors with persons who had already been excused from the panel and the viewing by jurors of the appellants in handcuffs. These incidents are referred to very briefly in the transcript; none are documented by affidavits; and we are of the opinion that the trial judge committed no reversible error in respect to any of the matters complained of by appellants in the impaneling of the jurors.

One of the principal assignments of error is the alleged disproportionate sentences given to appellants as contrasted with the sentence of life imprisonment given to their codefendant Britt. We have carefully reviewed the record in this regard, and we are of the opinion that there was material evidence in the record justifying the discretion exercised by the jurors in this regard.

■ The very essence of the statutory procedure under which the death penalty may be imposed is the requirement that the jurors consider each case separately and individually, and that they consider aggravating and mitigating circumstances in each case. Their decision, of course, is not to be reached in an arbitrary manner, but, on the other hand, the jury is certainly not required to impose the death penalty in every case involving a conviction of murder in the first degree.

■ The jury found aggravating circumstances against both Groseclose and Rickman which are clearly sustained by the proof, including the fact that this was a murder for hire and that it was particularly brutal and atrocious. In the case of Rickman, the evidence showed a substantial record of prior criminal activity. No mitigating circumstances were proved on his behalf. Groseclose had no prior criminal record, but this was the only mitigating factor established in his case. Witnesses whom he called, supposedly to attest to his general character and reputation, showed only that he had been well liked in his work at the naval base in Memphis. These witnesses, however, further said that appellant Groseclose had become unreliable and undependable in his work, that his general performance was unsatisfactory, and that he was discharged from his employment for that reason.

In his report to this Court summarizing the cases, the trial judge made the following comment with respect to appellant Rickman:

"Due to the facts that developed in this lawsuit the defendant's guilt was without question. The manner of the death of the victim in this case was the second worst manner this Court has seen in 15 years experience in criminal cases. This Court has no quarrel with the jury's decision as to the punishment for this defendant.

Earlier in the report, in describing the extent of harm or torture to the victim, the trial judge said:

"The manner of death was atrocious, after raping and stabbing the victim, she was choked unconscious, placed in the trunk of a car on 6/29/77, and died due to systematic hypothermia[1] (literally cooking to death). Body was found 7/4/77."

As to appellant Groseclose, the trial judge gave the same description of the manner of death and made this comment:

"There is no doubt in this Court's opinion that the defendant intended to kill his wife as shown by the proof. This defendant willfully, maliciously and intentionally set in motion the plan whereby his wife met a most atrocious death. The jury was justified in its decision as to the punishment for this defendant, although he was not physically present."

We find that the record fully supports these conclusions by the trial judge.

---

1. Apparently a typographical error for "systemic hyperthermia."

On the other hand, while Britt legally was as fully implicated in the homicide as was Rickman, there is evidence which, if accepted by the trier of fact, would establish that he did not physically engage either in the strangulation or the stabbing of the victim. He was only nineteen years of age with no prior criminal record. There was substantial evidence, both lay and expert, that he was subject to domination and influence by the older, more mature and more hardened criminal, Rickman. One of the statutory mitigating circumstances in this state is that the act was committed under duress or under the "substantial domination of another person." T.C.A. § 39-2404.

Further, as noted by the trial judge in his report, throughout the trial, and particularly at the sentencing hearing, Britt, unlike his codefendants, manifested remorse and regret over the incident. He testified that his guilty knowledge weighed heavily upon his conscience, and that when he was taken into custody on July 10 he freely and voluntarily disclosed all of the circumstances surrounding the death of the victim, including his own participation therein. The jury saw and observed his manner and demeanor in testifying, as contrasted to that of the appellants, both of whom, throughout most of the trial, denied any implication whatever. A trier of fact could reasonably accept the testimony which Britt offered. Further, there was expert evidence offered on his behalf that he is subject to a program of rehabilitation and could benefit therefrom, but no such evidence was offered by either of the appellants.

Britt testified that he had not planned to be present at the time of the homicide and that he only accompanied Rickman upon the latter's orders and directions. When Rickman first testified at the sentencing hearing, he denied any participation whatever in the events of June 29, 1977. Later, however, at the conclusion of the sentencing hearing, Rickman again took the stand. This time he testified that the written statement which he had earlier given investigating police was substantially correct and that he did in fact kill the victim. On this occasion, he confirmed Britt's testimony that the latter was present only on the orders of Rickman, to assist in the furnishing of transportation.[2] The jury was, of course, entitled to accept or reject all or part of Rickman's contradictory testimony, but at least at this point in the trial he did attempt to minimize the role which Britt had played.

In his report to this Court, the trial judge stated that there was evidence from which the jury could have found several mitigating circumstances, including absence of any prior criminal record, duress or domination by another person, youth of the accused and contrition and remorse. He commented upon the sentence of the jury as follows:

> "This trial jury under the evidence in this lawsuit could have easily found death as punishment. The jury evidently took into consideration the defendant's age (19) and his domination or influence by codefendant, Ronald E. Rickman. This trial Court has no quarrel with the jury's decision as to this defendant."

We are of the opinion that the jury did not act arbitrarily or capriciously in imposing the death penalty on appellants while while sentencing Britt to life imprisonment. The case of each of the accused persons had to be considered separately and on its own individual merits. Each of the defending parties was allowed very wide discretion in offering evidence at the sentencing hearing. The testimony ranged over a wide area, including philosophical and religious topics, as well as the personal history of each defendant. The only limitation which the trial judge imposed involved a detailed examination of the District Attorney and his staff by counsel for appellants, out of the presence of the jury, with respect to the refusal of the District Attorney to engage in plea bargaining in these cases and as to his

---

**2.** On this occasion Rickman testified that he had known Mrs. Groseclose previously and that she and others had supplied him with drugs for use in illegal narcotics sales. He also claimed that she had had an illicit love affair with him. This testimony was strongly challenged on cross-examination and was never corroborated by any other evidence.

policies in the handling of similar cases. No issue for jury consideration was developed at this portion of the sentencing hearing, in our opinion, but each appellant was given almost unlimited freedom to introduce any other mitigating evidence which he desired.

■ The remaining assignments of error by appellants challenge the constitutionality of the Tennessee death penalty statute in a number of respects. These issues have been previously considered and rejected by this Court in other cases. For example, appellants contend that the statutes are unconstitutional in that they do not require notice to the accused of the particular aggravating circumstances upon which the State will rely at trial. Both in *State v. Berry*, 592 S.W.2d 553 (Tenn.1980), and in *Houston v. State*, 593 S.W.2d 267 (Tenn. 1980),[3] this contention was considered and found to be without merit. In *Houston, supra*, most of the remaining contentions now made with respect to the alleged vagueness of the statutes, mandatory imposition of the death penalty, double jeopardy and use of hearsay evidence at the sentencing hearing were considered and rejected. Likewise found to be without merit was the contention that the statutes limit the mitigating circumstances which the jurors may consider or deprive them of any other accurate sentencing information. *See also Cozzolino v. State*, 584 S.W.2d 765 (Tenn.1979).

■ In the present case the appellants challenge the efficacy of Rule 47 of this Court to afford a meaningful or realistic comparison of cases arising under the death penalty statutes so as to prevent the arbitrary or capricious imposition of that penalty. We are of the opinion that the procedures prescribed in Rule 47 are sufficient. By any standard of comparison, where the public policy of a jurisdiction, as reflected in its statutes, authorizes the death penalty, the facts and circumstances of this case justify the action of the jury and of the trial judge in imposing it upon these appellants.

All assignments of error are overruled. The judgment of conviction in each case and the sentence imposed pursuant thereto are affirmed. The sentences will be carried out as provided by law on August 1, 1981, unless otherwise stayed or modified by appropriate authority. Costs are taxed to appellants.

FONES and COOPER, JJ., concur.

BROCK, C. J., concurs and dissents.

### OPINION

BROCK, Chief Justice, concurring and dissenting.

I concur in affirming the conviction of the defendants for first degree murder. I dissent, however, from the sentence of death, for the reasons expressed in *State v. Dicks*, 615 S.W.2d 126.

### ORDER

Appellants, William Edward Groseclose and Ronald Eugene Rickman, have filed petitions for rehearing. These have been considered by the Court and are found to be without merit. The petitions accordingly are overruled.

■ In each petition it is urged that the Court overlooked the "proportionality review" required by *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and by T.C.A. § 39–2406(c).

This matter was not overlooked. Near the conclusion of the opinion, the Court stated that by any standard of comparison, the facts and circumstances of this case justify the imposition of the death penalty. A case with facts so aggravated and shocking can scarcely be conceived, and no similar case or cases in which the death penalty has not been imposed in circumstances similar to those shown in this record has come to our attention.

■ The contention that the statutory aggravating circumstances used against ap-

---

**3.** *Cert. denied,* —— U.S. ——, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980).

pellants are void for vagueness and over-breadth was addressed by this Court at some length in its opinion in the case of *State v. Dicks,* 615 S.W.2d 126, particularly with reference to T.C.A. § 39–2404(i)(5). The Court there sustained the constitutionality of the statute, and we are of the opinion that its application to the facts of the present case is consistent with the interpretation stated in the *Dicks* case, *supra.*

The petitions for rehearing and for stay of sentence are overruled without prejudice, however, to the right of appellants to seek reconsideration of a stay if and when a proper application for review by the Supreme Court of the United States is filed.

Mr. Chief Justice Brock adheres to the views expressed in his dissenting opinion in these cases and in the *Dicks* case, *supra.*

FONES and COOPER, JJ., concur.

BROCK, C. J., concurs and dissents.