IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 18, 2004

## ORLANDO MALONE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Bradley County**
**No. M-01-194      Carroll L. Ross, Judge**

───────────

**No. E2003-02095-CCA-R3-PC - Fil;ed June 24, 2004**

───────────

The petitioner, Orlando Malone, appeals the denial of post-conviction relief. The single issue presented for review is whether the petitioner was denied the effective assistance of counsel. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Rodney Craig Miller, Cleveland, Tennessee, for the appellant, Orlando Malone.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Stephen Crump, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 22, 1998, the petitioner, accompanied by Anthony Reid and Oneal Sanford, was involved in the robbery of Marcus Williams, Eric Binion, Kenneth Blair, and Charles Massingill in Cleveland, Tennessee. The confrontation began when the petitioner asked Williams if he had change for a fifty-dollar bill and Williams responded in the negative. The petitioner and his companions departed, but returned shortly thereafter, confronting Massingill, who was outside, and ordering the others from the apartment. Sanford pointed a gun at Massingill's eye and asked whether he had any money. Massingill took 79 cents out of his pocket. Meanwhile, the petitioner pointed a gun at Binion and searched his pockets, taking his keys and approximately $30.00 in cash. The petitioner, still armed, also searched Blair and Williams and found nothing. At that point, Reid shot Blair in the head and Sanford shot Massingill in the eye. As Binion fled, he was shot in the hand. Williams was shot in the back and the leg.

The petitioner, Reid, and Sanford drove away together in a white car with a temporary tag. Bradley County Deputy Jimmy Woody chased a white car matching the description provided by Sergeant Randy Gates, who had investigated the scene. Officer Woody forced the vehicle to stop and Reid and Sanford, who were occupants, fled from the scene. The petitioner remained in the vehicle and was placed under arrest. The police found six .22 caliber shell casings near the scene of the shooting. A .22 caliber semi-automatic, a .22 caliber revolver, and a .45 caliber semi-automatic were found in the area where the petitioner was arrested. The shell casings found at the scene were stipulated to have been fired by one or more of the guns confiscated by the police. A search of the petitioner yielded 94 cents. When Sanford was captured, he had $40.67. There were two boxes of .22 caliber rounds found in the vehicle occupied by the petitioner at the time of his arrest. Thirty rounds were missing from one of the boxes. Blair, who had been shot in the head, died as a result of a .22 caliber bullet wound.

Later, the petitioner was tried and convicted of the first degree felony murder of Blair, two counts of the attempted especially aggravated robbery of Williams and Massingill, and one count of the aggravated robbery of Binion. The trial court imposed a total Range II sentence of life plus 20 years.

On direct appeal, the petitioner challenged the sufficiency of the evidence on each conviction. This court affirmed, holding that the evidence was sufficient to support findings of guilt beyond a reasonable doubt for all four convictions. State v. Orlando Malone, No. E1999-01347-CCA-R3-CD (Tenn. Crim. App., at Knoxville, May 26, 2000). Application for permission to appeal to the supreme court was denied on January 16, 2001.

On April 26, 2001, the petitioner filed a petition for post-conviction relief alleging, among other grounds, that he was denied the effective assistance of counsel. In particular, he argued that he wanted to testify at his trial but his trial counsel had refused to allow him to do so. Counsel was appointed and the petitioner filed an amended petition.

At the evidentiary hearing, the petitioner testified that the two attorneys who had been appointed to represent him at trial had failed to conduct an adequate investigation and had failed to allow him the opportunity to testify. He stated that had he been allowed to testify, he would have told the jury that he did not pick through any of the victims' pockets, that he had no cash on him at the time of his arrest, and that he was the only suspect that did not flee at the time of his arrest. The petitioner complained that his trial counsel should have lodged objections about references to his co-defendants and should have made arguments minimizing the level of his participation in the robberies in comparison to the others. It was his contention that the shootings were accidental because his co-defendants were struggling over cocaine. He argued that he was unarmed and had no intention to commit a robbery. While the petitioner conceded that he had lied during his initial police interview, he insisted that he still should have testified because he was not armed with a weapon and did not fire any shots. The petitioner acknowledged that trial counsel had advised against his testifying because of his prior criminal record. He contended that his testimony would have resulted in a lesser sentence than life.

-2-

Richard Hughes and Wayne Carter of the Public Defender's Office represented the petitioner at trial. Attorney Hughes testified that he interviewed several female witnesses identified by the petitioner but concluded that their testimony would not be of assistance in the defense to the charges. Attorney Hughes specifically recalled the petitioner's admission to trial counsel that he had been armed with a gun at the time of the offenses and had fired the weapon at the scene. His recollection was that the petitioner, whose trial testimony would have contradicted his statement to police, had been out of prison for only six months prior to the shooting and that his prior offense was aggravated assault. In the opinion of Attorney Hughes, the petitioner, after being advised that it would be unwise to testify, accepted the advice and made the ultimate choice not to be a witness in the trial.

Attorney Carter, who also testified at the evidentiary hearing, indicated that witnesses for the state appeared to be confused about whether the petitioner had actually possessed a weapon at the crime scene. He thought that the failure of police to find anything other than small change on the petitioner at the time of his arrest was favorable evidence to the defense. Attorney Carter explained that his primary concern about the petitioner's testifying was that he had admitted during an interview with counsel in preparation for trial that he was armed at the time of the offense and had fired his weapon. It was his opinion that the petitioner fully agreed that it was not in his best interest to testify.

At the conclusion of the hearing, the trial court determined that the petitioner was unable to provide the names of any potential favorable witnesses and was also unable to establish any deficiency in the degree of the investigation. The post-conviction court accredited the statements by trial counsel that the petitioner had made incriminating statements about being armed and about firing his weapon, facts that would have been made known to the jury had the petitioner chosen to testify. The post-conviction court found that an instruction on flight, to which the petitioner took exception, was appropriate because he had fled the crime scene with the co-defendants and was in the car when they tried to avoid the police. The post-conviction court also found that much of the evidence the petitioner sought to introduce at trial was submitted through other witnesses and concluded that the prior criminal record of the petitioner and his untruthful statements to the police warranted the attorneys' advice against testifying. While pointing out that the trial preceded the formal procedures now required by Momon v. State, 18 S.W.3d 152 (Tenn. 2000), and that the supreme court had ruled in that case that the holding would not be retroactively applied, the post-conviction court ruled that even if the rule in Momon had been in effect at the time of the trial, the error would have been harmless beyond a reasonable doubt.

In a post-conviction proceeding, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the

witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. <u>Bates v. State</u>, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. <u>Fields v. State</u>, 40 S.W.3d 450, 457-58 (Tenn. 2001); <u>see also</u> <u>State v. England</u>, 19 S.W.3d 762, 766 (Tenn. 2000).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

<u>Goad v. State</u>, 938 S.W.2d 363, 370 (Tenn. 1996). Further, reasonably based tactical decisions may not be viewed in hindsight based upon the results of the trial. <u>Hillard v. State</u>, 629 S.W.2d 4 (Tenn. 1982).

Initially, transcripts of neither the petitioner's trial nor his sentencing hearing are included in the record. It is the duty of the appellant to prepare a record which conveys a fair, accurate, and complete account of what transpired below with respect to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); <u>Groseclose v. State</u>, 615 S.W.2d 142 (Tenn. 1983); <u>State v. Miller</u>, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). In the absence of an adequate record on appeal, this court must presume that the rulings of the post-conviction court were correct. <u>State v. Keen</u>, 946 S.W.2d 842 (Tenn. Crim. App. 1999); <u>Vermilye v. State</u>, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979). In our view, the record fully supports the findings of fact and the conclusions of law made by the post-conviction court. The evidence presented by the petitioner did not preponderate against those findings. Because the petitioner was unable to establish either deficiency in performance or prejudice in result, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE