# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 2, 2011

## STATE OF TENNESSEE v. JIMMIE ROYSTON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 10-00458     Lee V. Coffee, Judge**

---

**No. W2010-02161-CCA-R3-CD  - Filed December 13, 2011**

---

A Shelby County jury convicted Defendant-Appellant, Jimmie Royston, of two counts of prostitution near a school, a Class A misdemeanor.  The two counts were merged into one judgment, and he received a sentence of nine months and a $1,000 fine.  On appeal, Royston asserts that (1) the evidence was insufficient to support the convictions for prostitution, and (2) the trial court erred in allowing the State to impeach Royston at trial with prior misdemeanor theft convictions.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Stephen Bush, District Public Defender; Phyllis Aluko (on appeal) and Timothy Albers (at trial), Assistant Public Defenders, Memphis, Tennessee, for the Defendant-Appellant, Jimmie Royston.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; William L. Gibbons, District Attorney General; and Kate Edmands, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Trial.**  Detective Gabriel Lawson of the Memphis Police Department Organized Crime Unit testified that on April 19, 2009, he and his team were conducting an operation to target "street-level prostitution in the area of Claybrook and Jefferson."  The area was known for prostitution, and it was common to "find prostitutes there just about every day of the week" and "at any time of the day."  Royston was arrested as a part of this operation, and

Detective Lawson completed the requisite paperwork. Detective Lawson testified that it was not raining when the officers arrested Royston.

Detective Daniel Arrington of the Organized Crime Unit testified that he was working in an undercover capacity on April 19, 2009, along with other members of the Unit. He was wearing plain clothes and driving an unmarked car. At about 11 p.m., he approached the intersection of North Claybrook and Jefferson. Detective Arrington testified that a convenience store located at the corner of that intersection was a "main hangout" for many male prostitutes. When Detective Arrington drove in front of the convenience store at the intersection, he saw Royston "just walking right on the sidewalk – right at the intersection, he was standing on the sidewalk." Detective Arrington and Royston made eye contact, and Royston immediately approached Detective Arrington's passenger window, which was down. Royston asked "what [Detective Arrington] was looking for." Arrington said he wanted oral sex, and Royston responded that he did not perform oral sex. Royston offered instead to either perform or receive anal sex. After Detective Arrington inquired about the price, Royston told him it would cost thirty dollars for Royston to receive anal sex. Arrington responded by saying, "Okay," and Royston got in the car.

Detective Arrington then drove away, giving the "takedown" signal to other officers and telling Royston that he needed to go to a nearby convenience store to buy a condom. When Arrington arrived at the store, he went inside, and the other officers arrested Royston.

On cross-examination, Detective Arrington testified that he had just begun working in the area when he saw Royston. When Arrington noticed him, Royston was standing on the sidewalk at the intersection. Royston had a beer, and he did not go in the store before he got in the car with Detective Arrington. It was not raining at the time. Arrington could not recall whether Royston had an umbrella with him.

Detective Joseph Rucker testified that he worked with the team targeting prostitution at the intersection of Jefferson and Claybrook. He was in a marked police car and was responsible for arresting prostitutes after undercover officers would give a "takedown" signal. Detective Rucker arrested Royston, who was sitting in Detective Arrington's car at a convenience store. Detective Rucker testified that the intersection of Jefferson and Claybrook is two to three tenths of a mile from Pyramid Academy, a school on Poplar Avenue.

Royston testified that on the night in question he was visiting a friend who lived about one and a half blocks from the intersection of Claybrook and Jefferson. He arrived there around 5 or 6:30 p.m. Since that time, he had gone to the store at the intersection of Claybrook and Jefferson several times to buy beer. When he went to the store again to buy

beer at around 10 or 11 p.m., he took an umbrella because it was "pouring down rain." Before he went in the store, a man drove up in a car and made eye contact with Royston. The man motioned with a head nod for Royston to come to the car, and Royston did so. The man said he wanted to have oral sex. Royston told the man that he "didn't participate in[] activity such as that." The man then said he wanted to have anal sex with Royston and offered to pay thirty-five dollars. Royston told the man to wait while he went in the store to buy beer, and then he returned to the car and got in. In explaining why he got into the car, Royston stated:

> I was insulted by the fact that here is another man asking me to have sex with him. So I had something else in mind for him rather than having sex with him. . . . I was gonna beat the shit out of him.

When Royston got into the car with his beer, the man asked him what kind he had purchased. The man wanted a different kind, and Royston thought he was driving to another store to buy that kind. When they arrived at the store, Royston got out of the car to "fluff [his] umbrella." Police officers then arrived and arrested Royston. Royston testified that he never told the man that he would have anal sex with him, and he did not intend to engage in prostitution.

Royston acknowledged on direct examination that he had previously been convicted of three misdemeanor thefts. On cross-examination, Royston conceded that he was aware the area was known for prostitution, and particularly homosexual prostitution. This was not the first time a man had tried to hire Royston as a prostitute in that neighborhood, but Royston did not think that the man was trying to hire a prostitute when he motioned for Royston. He acknowledged that the other man was substantially larger, and that Royston might have been significantly injured had he attacked the man.

Following the proof at trial, the jury convicted Royston as charged for both counts of prostitution near a school. The two counts were merged into one judgment, and the trial court sentenced Royston to nine months and a $1,000 fine. Royston filed a motion for a new trial, which was denied. This timely appeal followed.

**I. Sufficiency of the Evidence.** Royston argues that the evidence at trial was insufficient to convict him of either count of prostitution near a school. Regarding the first count, which alleged that he offered to engage in sexual activity as a business, Royston maintains that the evidence was insufficient to prove that the activity was a "business" within the meaning of the statute. Regarding the second count, which alleged that he loitered in a public place for the purpose of being hired to engage in sexual activity, Royston asserts that the evidence was insufficient to prove that he was "loitering." The State responds that the

evidence was sufficient on both counts. According to the State, the evidence was sufficient to show that Royston "was engaged in the business of prostitution" because he approached "customers seeking sex for money." Additionally, the evidence showed that Royston was "loitering" because he was standing on the sidewalk in front of the convenience store. We agree with the State that the evidence was sufficient to convict Royston of prostitution near a school.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997) (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

In order to convict Royston of prostitution near a school, the State was required to prove that he committed the offense of prostitution within one and a half miles of a school. T.C.A. § 39-13-513(b)(2) (2006). One commits prostitution by "engaging in, or offering to engage in, sexual activity as a business or being an inmate in a house of prostitution or loitering in a public place for the purpose of being hired to engage in sexual activity." Id. § 39-13-512(6). "'Sexual activity' means any sexual relations including homosexual relations." Id. § 39-13-512(7).

-4-

Although the term "loiter" is not statutorily defined, the Tennessee Supreme Court has approved of two definitions of the term. Metro. Gov't of Nashville and Davidson County v. Martin, 584 S.W.2d 643, 646 (Tenn. 1979). The first defines "loiter" as "to be slow in moving; to delay; to linger; to be dilatory; to spend time idly; to saunter; to lag behind." Id. (citing Hopper v. State, 253 S.W.2d 765, 766 (Tenn. 1952)). The second, from Black's Law Dictionary, similarly defines the term as "to be dilatory, to be slow in movement, to stand around, to spend time idly, to saunter, to delay, to idle, to linger, to lag behind." Id. (citing McCoy v. State, 466 S.W.2d 540, 542 (Tenn. 1971)).

Under either definition, the evidence was sufficient to prove that Royston loitered in a public place for the purpose of being hired to engage in sexual activity and that he did so within one and a half miles of a school. Detective Arrington testified that he first saw Royston as he was driving toward the intersection, and Royston was standing on the sidewalk in front of the store. Royston was located on a public street sidewalk behaving in a manner that fits both of the above definitions of "loiter." Royston's purpose in being there, a place he knew for male prostitution, was made clear when he approached Arrington. He inquired about what sort of sex act Arrington wanted and offered to exchange anal sex for thirty dollars. Finally, Detective Rucker testified that a school was two to three tenths of a mile away, well within the required distance of one and a half miles. We conclude, therefore, that the evidence, viewed in the light most favorable to the State, is sufficient to allow a rational trier of fact to find all the elements of the crime beyond a reasonable doubt.

Regarding the conviction for prostitution based on Royston's engaging or offering to engage in sexual activity as a business, Royston argues that the activity was not a "business" as required by the statute. He asserts that although "business" is not defined in the prostitution statute, this court has adopted the Business Tax Act definition of "business" for the purpose of interpreting criminal statutes.[1] See State v. Lane Pulley, No. M2000-02609-CCA-R3-CD, 2001 WL 1597740, at *3 (Tenn. Crim. App., at Nashville, Dec. 14, 2001). There, "business" is defined, in relevant part, to include "any activity engaged in by any person . . . with the object of gain, benefit, or advantage, either direct or indirect." T.C.A. § 67-4-702(2) (2006). The definition excludes "occasional or isolated sales or transactions by a person not routinely engaged in business." Id. According to Royston, this definition

---

[1]For this argument, Royston relies on State v. F. Chris Cawood, No. E2000-02478-CCA-R3-CD, 2002 WL 264621 (Tenn. Crim. App., at Knoxville, Feb. 25, 2002) (finding insufficient evidence of prostitution based on definition of "business"), perm. to appeal denied (Tenn. Sept. 9, 2002). As the State points out, that opinion was designated "not for citation," and it has no precedential value. See Tenn. Sup. Ct. R. 4(E)(1). Nevertheless, F. Chris Cawood relied, in turn, on State v. Lane Pulley, No. M2000-02609-CCA-R3-CD, 2001 WL 1597740, at *3 (Tenn. Crim. App., at Nashville, Dec. 14, 2001), which first adopted the definition of "business" for which Royston argues. Lane Pulley, unlike F. Chris Cawood, remains persuasive authority. See Tenn. Sup. Ct. R. 4(G)(1).

precludes a finding that he engaged or offered to engage in sexual activity as a business because there was no proof of the routine nature of his acts. We recognize Royston's argument concerning the definition of "business" as used in the prostitution statute. However, the indictment upon which the State tried Royston charged alternative theories of the same offense. One count alleged that Royston offered to engage in sexual activity as a business, while the other alleged that he loitered in a public place for the purpose of being hired to engage in sexual activity. Because the two verdicts merged into a single judgment, the State must have produced sufficient evidence on only one of these two theories in order for this court to affirm the conviction. Having found that the evidence was sufficient to support Royston's conviction of prostitution based on loitering, we need not determine the alternative question of whether Royston's conduct in this case amounted to "business" activity as used in the prostitution statute. Royston is not entitled to relief on these claims.

**II. Admissibility of Prior Convictions.** Royston argues that the trial court erred in admitting his prior convictions for the purpose of impeaching his trial testimony under Tennessee Rule of Evidence 609 because the State did not file timely notice and because the court failed to balance the probative value of the convictions against any unfair prejudicial effect. Although Royston concedes that he failed to raise the issue in his motion for a new trial, he asserts that plain error review is available to correct the trial court's mistake. The State responds that Royston has waived the issue by failing to provide a complete record of the relevant proceedings before the trial court. According to the State, this failure also precludes plain error review. We agree with the State that Royston has waived this issue.

First, Royston waived this claim by failing to present an adequate record for review. The record reflects that the State filed notice of its intent to impeach Royston with certain prior convictions under Tennessee Rule of Evidence 609 the day before trial commenced, contemporaneous to jury selection. A transcript of these proceedings, however, was not included in the record on appeal.[2] Moreover, when the trial court questioned Royston immediately before his testimony, it referred to earlier proceedings on this issue, making clear that the parties discussed it before jury selection. The appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). "Where . . . the record is incomplete, and does not contain a transcript of the proceedings relevant to an issue

---

[2]The record on this issue only includes the trial court's final ruling, which occurred during trial before Royston's testimony. The court found the convictions met the ten-year limit and discussed the probative value of the convictions. The court stated, "[A]ll [of the prior convictions] necessarily involve dishonesty; and that's one of the things that the jury will have to make a determination in this case as to whether or not these witnesses[] and/or Mr. Royston . . . are, in fact, honest or believable . . . ." It did not discuss the unfair prejudicial effect of the admission of the convictions or the amount of notice Royston received.

presented for review, or portions of the record upon which a party relies, this Court is precluded from considering the issue." State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988) (citing State v. Groseclose, 615 S.W.2d 142, 147 (Tenn. 1981); State v. Jones, 623 S.W.2d 129, 131 (Tenn. Crim. App. 1981)). "In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." State v. Bibbs, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing Smith v. State, 584 S.W.2d 811, 812 (Tenn. Crim. App. 1979); Vermilye v. State, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979)). Here, the record is incomplete because Royston failed to include a transcript of the proceedings in which the parties raised and the court first addressed the admissibility of the convictions. Consequently, Royston has waived the issue.

Second, Royston waived this argument by failing to include it in his motion for a new trial before the trial court. Tennessee Rule of Appellate Procedure 3(e) states, in pertinent part, that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Because this issue, if found to be meritorious, would result in a new trial, Royston's failure to include it in his motion for a new trial results in waiver. State v. Keel, 882 S.W.2d. 410, 416 (Tenn. Crim. App. 1994).

Since Royston has waived this issue, we may review it only for plain error. See Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."). In State v. Adkisson, this court stated that in order for an error to be considered plain:

(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is "necessary to do substantial justice."

899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (citations omitted). All five factors must be shown, and it is unnecessary to consider each factor if it is obvious that one of the factors cannot be established. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000). Furthermore, "'plain error' must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (quoting United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988)). Additionally, "rarely will plain error review extend to an evidentiary issue." State v. Ricky E. Scoville, No. M2006-01684-CCA-R3-CD, 2007 WL 2600540, at *2 (Tenn. Crim. App., at Nashville, Sep. 11, 2007) (citation omitted).

We are unable to conclude, on this record, that the State's untimely notice of its intent to impeach Royston with his prior theft convictions amounted to plain error. First, as we discussed earlier, the record does not clearly establish what occurred in the trial court. Although the State filed its notice the day before trial, the record shows the trial court conducted a hearing on this issue. Because the transcript of this hearing was not included in the record on appeal, it is unclear whether Royston had been provided with his criminal history prior to trial, see e.g State v. Barnard, 899 S.W.2d 617, 622 (Tenn. Crim. App.1994), or whether the trial court provided Royston with an opportunity to continue the case in light of the late filed notice, see e.g. State v. Andre D. Kimbrough, No. M2001-02149-CCA-R3-CD, 2002 WL 31694496 * at 5 (Tenn. Crim. App., at Nashville, Dec. 3, 2002). Moreover, Royston has failed to show that he was unduly prejudiced by the State's failure to follow Rule 609(a)(3). Here, Royston does not claim that he would not have testified had he known his testimony was subject to impeachment based on the prior theft convictions. In fact, the record demonstrates that the trial court advised Royston during a Momon hearing that (1) a previous hearing was held to determine the admissibility of his prior convictions; and (2) the court determined that those convictions would be admissible if Royston chose to testify. Thus, Royston was provided with an opportunity to make an informed decision whether to testify. Royston has failed to show plain error, and is not entitled to relief.

**CONCLUSION**

Upon review, we affirm the judgment of the trial court.

_____

CAMILLE R. McMULLEN, JUDGE

-8-