# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 1, 2011

## ORLANDO JONES v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court of Madison County**
**No. C-10-156   Roy B. Morgan, Jr., Judge**

---

**No. W2010-01827-CCA-R3-PC  - Filed May 2, 2011**

---

Pursuant to a plea agreement, the Petitioner, Orlando Jones, pled guilty as a Range III offender to aggravated assault and aggravated kidnapping in exchange for an effective sentence of twelve years in the Tennessee Department of Correction.  The Petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel and that his guilty pleas were not knowingly and voluntarily entered.  The post-conviction court denied relief after a hearing, and the Petitioner now appeals.  After a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Susan Korsnes (at post-conviction hearing) and Joseph T. Howell (on appeal) Jackson, Tennessee, for the Appellant, Orlando Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I.  Facts
### A.  Plea Hearing

This case arises from the Petitioner's attacking the victim, Willie Mae Crawford, with

a knife. At the Petitioner's plea submission hearing, the State offered the following factual basis for the Petitioner's pleas:

> [O]n or about October 12, 2008 [the Petitioner] did intentionally and/or knowingly cause bodily injury to Willie Mae Crawford by the use of a deadly weapon.
>
> State would show that she suffered cuts to her hands and also she was injured across the bridge of her nose. She was–also actually hair was pulled from her head. That was with respect to Count 2.
>
> With respect to Count 3. We would show on or about the same date and time, that being approximately 1:00 o'clock on October 12, 2008 at 430 Princeton here in Jackson, Tennessee, at that time he also interfered substantially with her liberty while he was armed with a deadly weapon, that being a knife.
>
> State here has recovered a knife and we've linked the knife along with blood found on the [Petitioner's] clothes through DNA. The DNA expert is here, Ms. Marquise has arrived with the victim's blood being on the knife and also on the [Petitioner's] clothes. We also have photographs depicting the scene and also the injuries with respect to Ms. Crawford.

Based on this conduct, the Petitioner pled guilty to aggravated assault and aggravated kidnapping. In response to the trial court's inquiries, the Petitioner agreed that the facts as represented by the State were "substantially correct." The Petitioner said he understood he was waiving his right to be sentenced as a Range I offender and that he understood the consequences of his plea agreement. The Petitioner agreed that he had reviewed the plea agreement "several times" with his attorney and that, although he only "reluctantly" agreed to the plea agreement, no one had coerced him into pleading guilty or offered him anything in exchange for pleading guilty. The trial court accepted the plea agreement.

Pursuant to the plea agreement, the trial court sentenced the Petitioner to twelve years for his aggravated assault conviction and eight years for his aggravated kidnapping conviction. The trial court ordered the sentences to be served concurrently, for a total effective sentence of twelve years.

### B. Post-Conviction Hearing

The Petitioner filed a timely petition for post-conviction relief, claiming he received

the ineffective assistance of counsel, and his guilty pleas were not knowingly and voluntarily entered. The post-conviction court appointed counsel for the Petitioner, and the court held a hearing on this petition wherein only the Petitioner testified.[1]

The Petitioner testified that his statement at his plea submission hearing that he was satisfied with Counsel's representation was "not entirely accurate." The Petitioner testified that he was "under duress" during the time between his arraignment and plea hearing because "at no time did the State make an offer [or] a plea deal at all " even though Counsel had requested a plea offer from the District Attorney's office. The Petitioner testified that the State filed superseding charges, which increased the "duress" he was under at the time.[2]

The Petitioner testified that, on the day of his plea hearing, he was "pretty down" because of the potentially long sentence he would receive, and he was "ready to dispose of the matter." He asked the trial court for permission to discuss a plea deal with the State's attorneys. The trial court assented, and, after some discussion, the State offered, in exchange for his guilty plea, to dismiss his attempted first degree murder charge, leave unaltered his aggravated assault charge, and reduce his especially aggravated kidnapping charge to aggravated kidnapping. The Petitioner testified that the State made this offer on the condition that he agree to be sentenced as a Range III offender to twelve years for his aggravated assault conviction and eight years for his aggravated kidnaping conviction. The Petitioner testified that he accepted the State's offer, and the parties returned to the courtroom where they announced the plea agreement, and the trial court went over the terms of the agreement with the Petitioner.

The Petitioner acknowledged that, during the plea submission hearing, he told the trial court that he understood that he was pleading guilty as a Range III offender whereas, based on his criminal record, he was a Range I offender. He testified, however, that this was because he did not understand the consequences of pleading as a Range III offender due to

---

[1]We have omitted from these facts the testimony presented pertaining to allegations not pursued by the Petitioner on appeal. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

[2]The record in this case does not contain the Petitioner's indictments and judgments of conviction in this case. As such, it is unclear from the record what the Petitioner was initially charged with and whether the State filed a superseding indictment. The transcript of the plea submission hearing makes clear, however, that at the time of the hearing, the Petitioner was charged in Count 1 with attempted first degree murder, in Count 2 with aggravated assault, and in Count 3 with especially aggravated kidnapping. Also, the trial judge presiding over the post-conviction hearing also presided over the Petitioner's plea submission hearing, and he confirmed that these were the Petitioner's original charges.

the "pressure" surrounding his guilty plea. He explained that he had only fifteen minutes to consider the State's plea offer and that he accepted the twelve-year sentence because it "automatically sounded better" than the fifteen to twenty-five year sentence he could receive for his original charges. He testified that it was later, when he was serving his sentence, that he understood that he would only have received a three to six-year sentence, had he been sentenced as a Range I offender. He testified that neither the State's attorneys, Counsel, nor the trial court informed him that the sentencing range for a Range I offender convicted of aggravated assault was three to six years. He said, "There's no way on earth if I knew I was a Range I Offender I'm gonna plead guilty to 12 years for something that I should have gotten 3 to 6 years for."

The Petitioner testified that, because he was not aware of his sentencing range as a Range I offender, he did not knowingly and voluntarily plead guilty. In support of this contention he relied upon the following portions of the plea hearing transcript, which he contends also demonstrated that his plea was not knowing and voluntary:

> THE COURT: Mr. Jones, you are admitting to guilt of Count 2, aggravated assault, receiving a 12-year sentence with a release eligibility of 45 percent. That's Range 3. No fine. Is that your understanding?
>
> THE DEFENDANT: I'm kind of confused. I'm a Range I Offender, but you're sentencing me on–I thought I was getting a sentence on the second count as a Range III.
>
> THE COURT: The second count is aggravated assault.
>
> THE DEFENDANT: Okay.
>
> . . . .
>
> THE COURT: You've gone over thoroughly with this agreement–the contents of this agreement with your attorney.
>
> THE DEFENDANT: Yes, as thoroughly as I could have in the time allotted, the 15-minute time period.
>
> . . . .

THE COURT: You have to know at this point because you're waiving your rights as I have explained. Do you understand?

THE DEFENDANT: I think she–I'm just nervous now.

The Petitioner testified that, due to the hurried nature of the proceedings, he lacked a "definite whole understanding" of the plea deal. He testified that this confusion prevented his plea from being "intelligent."

On cross-examination, the Petitioner confirmed he was originally charged with attempted first degree murder, which he knew carried a potential sentence of between fifteen and twenty-five years. He also agreed that he was originally charged with aggravated assault, which carried a three to six year sentence as a Range I offender, and especially aggravated kidnapping, which carried a fifteen to twenty-five year sentence. He testified that he did not understand at the time of the plea submission hearing that his sentences for attempted first degree murder and especially aggravated kidnaping would be served at 100% because they were violent offenses. He acknowledged, however, that he understood that he could receive up to twenty-five years for two of the charged offenses, and he agreed that his goal in entering plea discussions with the State was to receive something less than this sentence.

The Petitioner acknowledged that, at the beginning of the proceedings on the day his jury was to be empaneled, he asked the trial court to grant a short recess so that he could try to negotiate a plea deal with the State. He agreed that the trial court initially resisted, citing the great amount of time already allotted to the parties to negotiate a plea deal and the fact that the jury venire had already been assembled and was waiting across the hall. He acknowledged that the trial court relented when the Petitioner said, "It won't even take [30 minutes]. Give us 15 minutes, please." He agreed that he was "happy" with the twelve-year sentence the State offered on the day of the plea hearing, but he qualified this satisfaction, saying, "That was my decision that day." He said that, "in retrospect," he was not happy with the plea deal. He testified that he understood that, in exchange for him pleading guilty as a Range III offender, the State dismissed the attempted first degree murder charge.

The Petitioner acknowledged that, at various points throughout the plea submission hearing, he confirmed that Counsel had explained the terms of his plea agreement, that he understood its terms, and that, specifically, he understood that he was pleading guilty as a Range III offender although he was only a Range I offender. He also acknowledged that the trial court asked him whether he would like more time to discuss the plea agreement with Counsel and that he responded, "No, sir, I think that's well enough." He agreed that, on the day of the plea hearing, he did not want more time to consider the offer, but he insisted that,

once he began serving his sentence and learned more about "the guidelines," he regretted accepting the State's plea offer.

On re-direct examination, the Petitioner clarified that he did not accept the trial court's offer of more time to consider the plea deal because, at the time, he did not fully understand the terms of the plea agreement.

At the conclusion of the hearing, the post-conviction court concluded that the Petitioner's guilty plea was knowingly and voluntarily entered and that he received the effective assistance of counsel. The trial court denied the Petitioner's petition for post-conviction relief and later issued a written order reflecting this denial. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that he is entitled to post-conviction relief because: (1) he received the ineffective assistance of Counsel; and (2) his guilty pleas were not knowingly and voluntarily entered. The State responds first that the Petitioner has waived these issues by not including in the record copies of his plea agreement and of the trial court's judgments of conviction and sentence. It contends also that the Petitioner's claims are without merit, arguing that the Petitioner failed to present clear and convincing evidence either that Counsel's performance was deficient or that his guilty pleas were anything less than knowingly and voluntarily entered.

We first address the State's argument that the incomplete record precludes appellate review in this case. An appellant has the duty of preparing a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis of the appeal. Tenn. R. App. P. 24(b). In the absence of a complete record, this Court is precluded from reviewing any issues raised by an appellant and must presume the trial court's findings were correct. *See State v. Groseclose*, 615 S.W.2d 142 (Tenn. 1981). Further, an appellant should generally include within the record all relevant indictments and judgments of conviction and sentence in order to provide this Court with an accurate and complete basis upon which to review his claims. Though the Petitioner failed to include his indictments, a copy of his guilty plea, and the judgments entered against him in this case, the remaining portions of the record provide an adequate basis upon which this Court can review the Petitioner's claims. As such, we will review the issues raised by the Petitioner.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right.

6

T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2009). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State,* 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State,* 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can only be overcome when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State,* 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id*. at 457.

## A. Ineffective Assistance of Counsel

The Petitioner contends Counsel was ineffective because she failed to explain the "terms and effect" of pleading outside his sentencing range. He argues that, because he would not have accepted the plea had he understood the "terms and effect" of pleading as a Range III offender, Counsel's omission prejudiced him by causing his plea to be unknowing and involuntary. The State responds that the record establishes that Counsel adequately explained the State's plea deal to the Petitioner and that the Petitioner failed to establish that she did not explain the consequences of pleading outside of his range.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419

7

(Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland,* 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

At the conclusion of the post-conviction hearing in this case, the post-conviction court recalled that on the day the Petitioner submitted his guilty pleas, the Petitioner's case had been set for trial "for some time" and the jury pool for the Petitioner's trial had already gathered in the courthouse. He recalled that, were it not for the Petitioner's "last-minute" request to discuss a plea deal with the State, he would have impaneled and sworn the jury on that day.

The post-conviction court next made several findings of fact. The post-conviction court found that, with Counsel's aid, the Petitioner negotiated an advantageous plea deal with the State and that the trial court thoroughly questioned the Petitioner about his plea, explaining that the Petitioner would ordinarily be considered a Range I offender. The record does not preponderate against these findings. *See Fields*, 40 S.W.3d at 456-57.

The post-conviction court next found that, on the day of the plea submission hearing, the Petitioner was satisfied to receive a twelve-year sentence rather than the twenty-five year sentence he faced for attempted first degree murder and that only later, when he began serving his sentence, decided he was "not satisfied" with his sentence. Noting that a defendant may plead outside his range as long as he does so knowingly and voluntarily and that the trial court ensured that the plea was knowing and voluntary, the post-conviction court found that the Petitioner failed to prove by clear and convincing evidence that he was entitled to post-conviction relief.

We agree with the post-conviction court that any alleged omission by Counsel did not cause the Petitioner to enter an unknowing and involuntary plea. As the post-conviction court noted, the Petitioner waited until just before his trial was to begin to seek a more favorable sentence than that which he faced for attempted first degree murder and especially aggravated kidnapping. The Petitioner claims that Counsel did not inform him that a Range I offender would be subject to a three to six-year sentence for aggravated assault or aggravated kidnapping, the charges to which he pled guilty. However, in our view, this alleged omission was not unreasonable on the part of Counsel, who, at the behest of her client, successfully negotiated a final-hour plea deal.

When the Petitioner began plea negotiations, he faced, as a Range I offender, a potential sentence of twenty-five years for both his attempted first degree murder charge and his especially aggravated kidnaping charge, and a twelve-year sentence for his aggravated assault charge. The State offered to dismiss the attempted first degree murder charge and

reduce the especially aggravated kidnapping charge to aggravated kidnapping in exchange for the Petitioner pleading guilty as a Range III offender to aggravated assault and aggravating kidnapping, with an effective twelve-year sentence. Essentially, the Petitioner was allowed to choose between: a) risking being convicted of attempted first degree murder, especially aggravated kidnapping, and aggravated assault and being sentenced as a Range I offender; or b) pleading guilty as a Range III offender to aggravated assault and aggravated kidnapping. The option of pleading guilty as a Range I offender to only aggravated assault and aggravated kidnapping was never on the table. The Petitioner could conceivably have been acquitted of attempted first degree murder and convicted only of aggravated assault and the lesser included offense of aggravated kidnaping, which would have exposed him to only a three to six-year sentence. The Petitioner, however, obviously did not believe this outcome was likely, because he stated numerous times during his post-conviction hearing that he feared he would be convicted of attempted first-degree murder and sentenced to twenty-five years. Taking this into consideration, the Petitioner likely would have accepted the State's plea offer even were he to have been informed that as a Range I offender he would only receive a three to six-year sentence if convicted of aggravated assault. Given these circumstances, Counsel's omission was not "unreasonable," especially in light of the hurried nature of the last-minute plea negotiations, for which the Petitioner himself was largely responsible.

We conclude that the Petitioner failed to demonstrate that Counsel's services fell outside the range of competence normally required of attorneys in criminal trials. *See Baxter*, 523 S.W.2d at 936. Having failed to demonstrate the first prong of the *Strickland* standard, the Petitioner has not met his burden of showing he is entitled to post-conviction relief based upon Counsel's performance. *Id*. He is not entitled to relief on this issue.

### B. Involuntary & Unknowing Plea

The Petitioner contends he did not knowingly and voluntarily plead guilty because he did not receive sufficient time to comprehend the nature and effect of pleading outside the appropriate sentencing range. The State responds that, because the Petitioner negotiated to receive a favorable sentence, appeared to be satisfied with the sentence at the plea submission hearing, and indicated to the trial court that he understood the consequences of pleading guilty, his plea was knowing and voluntary.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v.*

*Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances relevant to a guilty plea include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir.1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.*

"Whether a guilty plea meets the constitutional standards of voluntary and knowing is a mixed question of law and fact." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003) (citing *United States v. Gray*, 152 F.3d 816, 819 (8th Cir. 1998)). This Court reviews mixed questions of law and fact de novo with a presumption of correctness "given only to the post-conviction court's findings of fact." *Id.* (citing *Fields*, 40 S.W.3d at 458).

As detailed above, the post-conviction court made several factual findings and rejected the Petitioner's claim that his guilty pleas were not knowingly and voluntarily entered. Among these were that the Petitioner sought a plea deal at the last minute before trial and that he obtained a highly favorable plea deal wherein he would receive only a twelve-year sentence rather than the twenty-five year sentence he would have received if convicted of attempted first degree murder. The post-conviction court found that the Petitioner was advised of the consequences of pleading guilty outside of his range. As noted above, the record does not preponderate against these findings; therefore, we will presume them correct. *See Jaco*, 120 S.W.3d at 830.

The Petitioner claimed at the post-conviction hearing that he was under "coercion" to accept the State's plea offer due to the amount of jail time at stake and the hurried nature of plea negotiations. Because the Petitioner himself was responsible for the hurried, chaotic nature of the plea negotiations and because he repeatedly denied the trial court's offer of more time to consider the plea offer, the relatively short amount of time in which the plea agreement was reached did not amount to "coercion" in this case. Although the Petitioner at times appeared to falter during the plea submission hearing, telling the trial court that he was "nervous," the Petitioner emphatically insisted that he wanted to accept the State's plea deal each time the trial court inquired about the Petitioner's nervousness. In summary, the

Petitioner has failed to present any evidence that his guilty plea was "coerced" within the meaning of *Blankenship*. *See* 858 S.W.2d at 904.

As to the Petitioner's claim that his lack of an understanding of the consequences of pleading outside his range prevented him from knowingly and voluntarily entering a plea, we note that the Petitioner acknowledged several times during the post-conviction hearing that he was "guilty" of the charges against him. This admission by the Petitioner further supports our inference that the Petitioner, at the time of plea negotiations, believed he would receive the maximum twenty-five year sentence for attempted first degree murder and especially aggravated kidnapping if tried. Therefore, being informed that, if convicted of aggravated assault or aggravated kidnapping alone, he would face a three to six-year sentence as a Range I offender would not have affected his decision to accept the plea deal. For these reasons, we conclude that the Petitioner's decision to accept the plea deal appears to have been " a voluntary and intelligent choice among the alternative courses of action open to the defendant." *See North Carolina v. Alford*, 400 U.S. at 31.

After reviewing the totality of the circumstances, we agree with the post-conviction court that the Petitioner has failed to prove that his guilty pleas were not knowingly and voluntarily entered. *See Turner*, 919 S.W.2d at 353. The Petitioner is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the Petitioner received the effective assistance of counsel and that the Petitioner's pleas were knowingly and voluntarily entered. Accordingly, we affirm the post-conviction court's judgment.

_____

_____

ROBERT W. WEDEMEYER, JUDGE