IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 24, 2019

**STATE OF TENNESSEE v. LEONARD SINGER**

**Appeal from the Circuit Court for Rutherford County**
**No. F-74991    David M. Bragg, Judge**

_____

**No. M2018-01936-CCA-R3-CD**

_____

A Rutherford County Circuit Court jury convicted the Defendant-Appellant, Leonard Singer, of tampering with evidence, simple possession of cocaine, and possession of drug paraphernalia.  See Tenn. Code Ann. §§ 39-16-503, 39-17-418, 39-17-425.  On appeal, Singer argues:  (1) he received ineffective assistance of counsel from his preliminary hearing through trial; (2) his confession to ingesting a marijuana joint was coerced; (3) his arrest was not supported by probable cause and the police did not have authority to search his person or his truck; (4) the State withheld exculpatory evidence; (5) his indictment was defective; (6) the police, his attorneys, the prosecutors, and the trial judge conspired against him by making materially false statements and representations and by concealing and fabricating government documents; and (7) the Tennessee Board of Probation and Parole violated Code section 40-35-207 and violated his due process rights.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Leonard Singer, Pikeville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Shawn Puckett and Matthew Westmoreland, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

On January 5, 2016, Singer was indicted for tampering with evidence, simple possession of cocaine, possession of drug paraphernalia, and resisting arrest. He was appointed a public defender to represent him.

**First Motion to Suppress.** On June 21, 2016, Singer, through counsel, filed a motion to suppress, arguing there was no valid basis for his stop. At the May 6, 2016 suppression hearing, Officer Aaron Price of the Murfreesboro Police Department testified that he stopped Singer on October 27, 2015 for a light law violation because Singer failed to activate his headlights when it was raining and dark outside. Officer Price said that when he saw Singer driving toward him without his headlights on, he immediately turned around, activated his blue lights, and began following him. Despite the actions taken by Officer Price, Singer did not stop his truck and continued to drive for 100 to 200 yards into a parking lot. During this time, Officer Price said Singer "lifted up out of his seat, appeared to be digging under his seat[, and] was digging in his center console." Because Officer Price was concerned that Singer was concealing something or retrieving a weapon, he called for backup, and Singer eventually came to a stop in the parking lot. When Officer Price approached the truck, Singer "turned and looked at [him] but continued to go through the center console area."

Officer Price then asked Singer "what he was doing," and Singer responded that he was looking for his wallet. However, he could see that Singer was holding his wallet in his left hand. When Officer Price informed Singer that he was holding his wallet, Singer continued to dig in the area of his center console. At that point, Officer Price became "very concerned." He grabbed Singer's left wrist, leaned into Singer's truck, and ordered Singer to exit his vehicle. Singer then mentioned something about his cigarettes, which Officer Price had seen next to the center console, and Singer continued to dig through his center console. When Officer Price ordered him to get out of his truck again and attempted to pull him out of his truck, Singer resisted, and Officer Price placed his arms around Singer and pulled him out of his truck. Officer Price noticed Singer attempting to hide something in his right hand, and Officer Price took Singer to the ground. As they hit the ground, Singer landed face-down, and Officer Price ended up on top of Singer's back and observed a crack pipe roll out from underneath Singer. Officer Price also observed Singer chewing on something. When Officer Price attempted to pull both of Singer's hands behind his back, Singer refused to cooperate.

Officer Price said that although he gave Singer verbal commands to stop, relax, and put his hands behind his back, Singer refused to do these things, and they continued to struggle for three to four minutes until two other officers arrived on the scene. During this struggle, Officer Price repeatedly ordered Singer to spit out whatever he was chewing, and Singer finally spit out a bag. Officer Price said this bag was "like paper rolled up with . . . cooking wrap or something, a clear wrap wrapped around it." Despite

- 2 -

Officer Price's repeated orders to spit out whatever he had in his mouth, Singer continued to chew on something. Officer Price then saw Singer spit out a second bag that was "wrapped the exact same way," and noticed that Singer "continu[ed] to chew on something."

Although Officer Price did not know what Singer was chewing, he did not want him swallowing it because it was obvious that Singer did not want him to know what it was. Officer Price said that once Singer was arrested, he asked Officer Palmer Gibbs to advise Singer of his Miranda rights, which Officer Gibbs did before interviewing Singer and accompanying him to the hospital. Thereafter, Officer Price processed the scene and found the crack pipe that had fallen out of Singer's truck during the struggle. He and other officers also found crack cocaine inside a rolled up dollar bill that was hidden above the driver's side window of Singer's truck, a Brillo pad in Singer's center console, and a homemade crack pipe made of tinfoil as well as a roll of tinfoil inside Singer's truck. After Singer was released from the hospital, Officer Price encountered him as he was being booked, and Singer admitted that he had been chewing on a "marijuana joint."

Officer Price acknowledged that prior to stopping Singer, his own windshield wipers, as verified by the dashboard camera in his patrol car, were on the intermittent setting. He stated that when he first encountered Singer, Singer had pulled out of the dead end area of North Maple, a known drug area, and Singer did not have his headlights activated. He also said that although he was familiar with many of the vehicles driven by people who lived in that particular area, he had never seen Singer's truck before. Officer Price admitted that Singer was not speeding or swerving before he initiated the stop.

The video recording of Singer's stop was admitted as an exhibit at the suppression hearing and was viewed by the trial court. This recording showed that it was raining and dark at the time of the stop, that Singer did not have his taillights activated, and that Singer immediately moved into the right lane in an effort to evade Officer Price's patrol car that had pulled in behind him. Once Officer Price initiated Singer's stop by turning on his blue lights, Singer activated his brake lights and turned into an Office Depot parking lot. Singer continued through this parking lot without stopping, and Officer Price asked for backup because Singer failed to stop and because Singer appeared to be "digging around" for something in his truck. Officer Price activated his siren, and Singer finally stopped his truck.

When Officer Price approached the driver's side of the truck, he asked Singer, "What are we doing?" He then repeated this question and told Singer to "hop out," and Singer replied that he was getting his wallet. Officer Price told Singer that he already had his wallet in his hand and that he needed to exit his truck. When Singer said that he was getting his cigarettes, a struggle ensued between Officer Price and Singer. While the

audio from this recording showed that this struggle occurred, the video portion of the recording did not depict the struggle because Singer's truck blocked the camera's view. During this struggle, Officer Price ordered Singer several times to relax and to place his hands behind his back. He also repeatedly ordered Singer to "spit it out."

The recording shows that two other officers appeared at the scene and ran to the driver's side of Singer's truck, where they were out of the camera's view. One of the officers can be heard asking if another officer had Singer's arm, and an officer can be heard ordering Singer to stand up. During this struggle, Singer dramatically and repeatedly screamed, "My back," and one of the officers commented that Singer had spit something out of his mouth. Additional officers arrived at the scene, who noted that a pipe had been found inside Singer's truck and that a second pipe had been found outside his truck on the ground.

At the conclusion of the suppression hearing, the trial court denied Singer's motion on the basis that Officer Price's stop of Singer was valid. The court stated that in addition to considering Officer Price's testimony and the video recording from the stop, it had also reviewed Code section 55-9-406(b)(1), which requires a driver's headlights to be activated "during any time when rain, mist, or other precipitation, including snow, necessitates the constant use of windshield wipers by motorists." The court found that it was raining at the time of Singer's stop and that Officer Price's "windshield wipers were on constantly." After determining that the weather conditions that day required drivers to have their headlights activated, the court held that Officer Price's stop of Singer was valid.

On August 16, 2016, the public defender representing Singer filed a motion to withdraw after Singer lodged a formal criminal complaint against her alleging that she had "act[ed] in concert with the prosecutor and other persons to deprive [him] of his rights and due process," that she "ha[d] failed to file legal claims on his behalf," that she "ha[d] concealed exculpatory evidence," that she "ha[d] edited the video of the traffic stop," and that she had provided "unprofessional, inadequate" representation.

On August 19, 2016, the trial court appointed trial counsel[1] to represent Singer. However, on November 18, 2016, the court appointed successor trial counsel to represent Singer. On April 17, 2017, successor trial counsel filed his first motion to withdraw.

**Second Motion to Suppress.** On May 8, 2017, Singer, with the assistance of successor trial counsel, filed a second motion to suppress, arguing that any evidence

---

[1] The record does not include a motion to withdraw or accompanying order regarding trial counsel's withdrawal from Singer's case.

associated with his alleged confession should be suppressed because he did not give a knowing, voluntary, and intelligent waiver of his Miranda rights. Singer specifically claimed that his waiver was involuntary because he had suffered a back injury, his confession had been secretly recorded, and he had been threatened several times that his stomach would be pumped if he did not "advise the interrogating officer satisfactorily" about what he had ingested.

At the May 15, 2017 suppression hearing, Officer Gibbs of the Murfreesboro Police Department testified that he encountered Singer at the scene on October 27, 2015, after Officer Price called for backup. Shortly after arriving at the scene, Officer Gibbs advised Singer of his Miranda rights. He acknowledged that Singer had complained several times about his back hurting while at the scene. Officer Gibbs acknowledged telling Singer that, for medical reasons, he needed to disclose what he had consumed or his stomach might be pumped; however, he denied giving Singer this information in a threatening manner. He explained that he told Singer this because "[d]epending on the type of drug and the amount, [the person] could overdose and die." Officer Gibbs said he later accompanied Singer to the hospital, where he made two video recordings of Singer on his cell phone. He acknowledged that Singer seemed to be in a fair amount of distress about his back when he arrived at the hospital and was confused about why he had been arrested. However, Officer Gibbs stated that Singer was able to answer most, if not all, of his questions. In the first video, Singer falsely told Officer Gibbs that there were drugs in his anus, and Officer Gibbs accused Singer of giving him this false information as a way to divert his attention from what Singer was chewing. In the second video, Singer admitted to Officer Gibbs that he ingested a partially smoked marijuana joint. While Officer Gibbs acknowledged that Singer was calmer during the second video where he made the admission, he could not explain the reason for Singer's change in demeanor, other than he had talked with Singer for a while, which seemed to calm him. Officer Gibbs could not recall whether Singer had been given any medication by the hospital staff prior to admitting that he ingested the marijuana joint. He acknowledged that he did not give Singer his Miranda rights again on the way to the hospital or at the hospital before Singer gave this admission. While he acknowledged that Singer initially told him several times that he had not consumed any drugs, Officer Gibbs noted that "there was an odor of marijuana" coming from Singer's person, which was noticed by several other officers. He also said Singer had green residue in his mouth and on his teeth from whatever he had been chewing, which indicated that Singer had consumed the marijuana "very recently." Officer Gibbs stated that Singer was obviously chewing on something both at the scene and during the ambulance ride to the hospital.

The video recording of Officer Gibbs' conversation with Singer at the scene was played for the court. In it, Officer Gibbs advised Singer of his Miranda rights, and Singer stated that he was willing to talk to him. The video recordings that Officer Gibbs made

of Singer at the hospital were also played for the court. Officer Price also testified at this hearing and provided similar testimony to what he had given at the earlier suppression hearing.

At the conclusion of this hearing, the trial court stated that it had considered the testimony presented and had reviewed the relevant videos showing Singer at the scene and at the hospital. The court found that Singer had been given his Miranda rights at the scene and that from the time of Singer's initial stop to the time Singer confessed to ingesting the marijuana joint, he was able to engage in conversation with all of the officers present. The court then held that because all of Singer's statements "were made willingly and voluntarily," they would not be suppressed.

On March 14, 2018, successor trial counsel filed a second motion to withdraw, asserting that Singer insisted on taking action that the attorney considered repugnant and that Singer himself was so repugnant to successor trial counsel that it likely impaired the attorney-client relationship and counsel's ability to represent Singer. Thereafter, the trial court granted the motion to withdraw on the condition that successor trial counsel remain as "elbow counsel" for Singer. On April 18, 2018, and May 3, 2018, Singer filed two pro se motions to dismiss, alleging in part that his indictment was defective and that the court was without jurisdiction because the count charging him with tampering with the evidence pursuant to Code section 39-16-503 used the word "substance."

**Trial.** At the jury trial on July 30, 2018, Singer represented himself with successor trial counsel acting as "elbow counsel." Officer Price provided testimony similar to the testimony he had provided at the suppression hearings. In addition, Officer Price asserted that he pulled Singer out of his truck because he was concerned that Singer was looking for a weapon. As he and Singer fell to the ground, some items also fell to the ground, including a glass pipe used to smoke crack cocaine. Officer Price said that despite giving Singer repeated commands, Singer continued to try to stand up while Officer Price was on his back. Officer Price observed that Singer was continuously chewing on something, and when he told him to spit it out because he was concerned that Singer had ingested something that could hurt him, Singer refused. Officer Price then tried to pull Singer's arms behind his back, but Singer refused to cooperate. They continued to struggle until two other officers arrived on the scene, and then all three officers worked together to place Singer's hands behind his back so they could arrest him.

Officer Price said that once Singer was handcuffed, Singer's person was searched incident to his arrest. He said that during the entirety of the struggle and even after he was placed in custody, Singer continued to chew on something, despite his repeated commands for Singer to spit it out. Officer Price also smelled the odor of raw marijuana

coming from Singer's mouth and noted that Singer's tongue and mouth looked green. He said that other officers at the scene also commented that they smelled marijuana on Singer's breath. Officer Price stated that although Singer eventually spit out two packs of gauze wrapped in cellophane, he continued to chew something. He asserted that he did not collect these gauze packs because they did not contain drugs. A video recording of Singer's stop was played for the jury.

Officer Price and other officers then searched Singer's truck and found a rolled dollar bill containing cocaine wedged in the frame of the driver's side door. They also found a tinfoil crack pipe and a Brillo pad, which acts as a filter for crack pipes, in the center console of Singer's truck.

Officer Price observed Singer again when he was being booked at the jail. During the booking process, Singer admitted to Officer Price that he had been chewing on a partially smoked marijuana joint at the time of the stop.

Officer Gibbs testified that when he first arrived at the scene, Singer was standing next to his truck and complaining that his back hurt. He smelled the odor of marijuana coming from Singer's person and observed Singer chewing something. Officer Gibbs advised Singer of his Miranda rights at the scene.

Because Singer had likely ingested drugs and had complained that his back was hurting, Officer Gibbs accompanied Singer to the hospital. During the ambulance ride, Singer continued to chew on something. When they arrived at the hospital, Officer Gibbs observed a green substance on Singer's tongue and in his teeth. Singer then gave Officer Gibbs false information that he had placed drugs in his anus. Later, Singer confessed to ingesting a small piece of marijuana from a joint. A video recording of Singer's confession was played for the jury. Officer Gibbs said he asked Singer how much marijuana he had consumed so he could advise the medical staff, who were deciding what procedures would be necessary. He asserted that although he allowed Singer to use his cell phone while at the hospital, he never made any direct or implied promises to Singer in exchange for Singer's confession to ingesting the marijuana. When Singer was cleared by the medical staff, he walked out of the hospital.

Special Agent Laura Cole, a forensic scientist for the Tennessee Bureau of Investigation, testified that she tested the white powder that was found on a dollar bill wedged in the door frame of Singer's truck. She confirmed that the white powder was 0.04 grams of cocaine.

At the conclusion of trial, Singer was acquitted of resisting arrest but was convicted of the remaining charges. The trial court then sentenced him as a Range II,

multiple offender to concurrent sentences of eight years for the tampering with evidence conviction and eleven months and twenty-nine days for the simple possession of cocaine and possession of paraphernalia convictions. The court ordered that this effective eight-year sentence would be served consecutively to Singer's Texas sentence, for which Singer was on parole at the time he committed the offenses in this case. The judgments of conviction for the Tennessee offenses were entered on September 21, 2018.

On October 17, 2018, Singer filed a "Motion in Arrest of Judgment." In it, he alleged that the indictment count charging him with tampering with evidence was defective because it failed to charge an offense; that the statute charging him with tampering with evidence was void for vagueness; that the state trial court lacked jurisdiction to hear his case because he had filed a federal civil lawsuit prior to his criminal trial; that the trial court judge, the district attorney, the prosecutor, and all of the attorneys who represented him had made "false representations concerning a material fact;" and that the Tennessee Parole Board failed to conduct a minimal investigation pursuant to Code section 40-28-106. On October 22, 2018, before the trial court ruled on this motion, Singer filed a timely notice of appeal.

On December 14, 2018, after Singer filed his notice of appeal, the trial court entered a written order denying the motion for arrest of judgment.[2] In its order, the court noted that it had previously ruled on a motion to suppress the evidence seized during the stop of Singer's vehicle as well as a motion to dismiss the indictment based upon the same grounds alleged in this motion. The court then held that Singer's indictment was not defective because it contained sufficient information to provide Singer with knowledge of the accusation to which answer is required, to furnish the court with an adequate basis for entry of a proper judgment, and to protect Singer against double jeopardy, as required by State v. Hill, 954 S.W.2d 725 (Tenn. 1997).

## ANALYSIS

**I. Ineffective Assistance of Counsel.** Singer argues that he received ineffective assistance from all the attorneys who represented him from the preliminary hearing through trial.[3] He specifically complains that his attorneys failed to confer with him, failed to conduct an appropriate investigation and research, failed to obtain evidence in the State's possession, failed to discuss strategies and tactical choices, failed to

---

[2] We note that the trial court did not have jurisdiction of Singer's case at the time it entered its order denying the "Motion in Arrest of Judgment" because Singer had already filed his notice of appeal.

[3] We have reordered Singer's issues for clarity.

investigate his civil rights violations that were the subject of his federal lawsuit, failed to challenge his defective indictment, failed to emphasize Officer Price's excessive use of force, failed to provide any case law to support his motions to suppress, failed to confront the witnesses against him, failed to allow him to present witnesses in his favor, and failed to challenge his arrest and the search of his person and his truck. Singer contends that because his attorneys failed to provide constitutionally adequate representation, he failed to receive a fair trial. The State responds that Singer has waived this issue by never raising it in the trial court or in a motion for new trial. Waiver notwithstanding, the State argues that Singer has failed to show that counsel's performance was deficient or prejudicial. We conclude that Singer has waived plenary review of this issue and is not entitled to plain error relief.

Initially, we recognize that while ineffective assistance of counsel claims may be raised on direct appeal, it is a practice "fraught with peril since it is virtually impossible to demonstrate prejudice as required without an evidentiary hearing." State v. Blackmon, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001) (citation and internal quotation marks omitted). This practice is unwise because once an ineffective assistance of counsel claim is raised and adjudicated on direct appeal, it may be deemed previously determined for purposes of later post-conviction relief. See Tenn. Code Ann. §§ 40-30-106(h) ("A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing."), 40-30-106(f) ("If the facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined, the petition shall be dismissed.").

Tennessee Rule of Appellate Procedure 3(e) states that all issues for review upon which a new trial is sought must be raised in a motion for new trial:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e) (emphases added); see Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Singer's claim that he received ineffectiveness of counsel, for which the appropriate remedy is a new trial, was not included in a motion for new trial.

Accordingly, we conclude that Singer has waived this issue, absent plain error. The plain error doctrine states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). In order for this court to find plain error,

> "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "[P]lain error must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (internal quotations marks and citations omitted). "It is the accused's burden to persuade an appellate court that the trial court committed plain error." State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing United States v. Olano, 507 U.S. 725, 734 (1993)). "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Smith, 24 S.W.3d at 283.

We note that in order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

- 10 -

After reviewing the entire appellate record in this case, we conclude that none of the attorneys who represented Singer were ineffective. Instead, all of Singer's attorneys provided representation that far exceeded the objective standard of reasonableness under prevailing professional norms at each and every stage of the proceedings, despite the fact that Singer was a difficult, and sometimes impossible, individual to represent. Accordingly, we can easily conclude that Singer, who failed to even ask for plain error relief from this court, has failed to establish that a clear and unequivocal rule of law was breached, that a substantial right of his was adversely affected, or that consideration of the error was necessary to do substantial justice. Because Singer has failed to establish all five of the required factors, he is not entitled to plain error relief. See Smith, 24 S.W.3d at 282.

**II. Coerced Confession.** Singer also argues that his confession to consuming a marijuana joint was coerced. He claims that Officer Gibbs secretly recorded his confession and that Officer Price's excessive use of force at the stop made his later confession to ingesting the marijuana joint involuntary. In response, the State contends that Singer waived this issue by failing to raise it at his suppression hearing or in the motion to arrest judgment that he filed following his conviction, see Tenn. R. App. P. 36(a), and by failing to provide any facts to support his contention, see Tenn. Ct. Crim. App. R. 10(b). Waiver notwithstanding, the State asserts that Singer had been properly advised of his Miranda rights at the time he gave his statement to Officer Gibbs and that the reason Officer Gibbs asked Singer what he had ingested was in order to obtain appropriate medical care for him. Once again, we conclude that Singer has waived plenary review of this issue and is not entitled to plain error relief.

Although Singer properly raised the claim that his confession was coerced in his second suppression motion, he did not include this issue in a motion for new trial. See Tenn. R. App. P. 3(e); Tenn. R. App. P. 36(a). Accordingly, we conclude that Singer has waived this issue, absent plain error. See Tenn. R. App. P. 3(e); Tenn. R. App. P. 36(a); Smith, 24 S.W.3d at 282.

Because "coerced confessions are inherently unreliable," only voluntary confessions are admissible. State v. Climer, 400 S.W.3d 537, 567 (Tenn. 2013). In order for a statement to be voluntary, it "'must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'" State v. Kelly, 603 S.W.2d 726, 727 (Tenn. 1980) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)).

Whether a confession is involuntary is a question of fact. State v. Willis, 496 S.W.3d 653, 695 (Tenn. 2016) (citing State v. Sanders, 452 S.W.3d 300, 305 (Tenn. 2014)). The State has the burden of establishing the voluntariness of a confession by a

preponderance of the evidence.  Id. (citing Sanders, 452 S.W.3d at 305).  "The test of voluntariness for confessions under article I, § 9 of the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment."  State v. Smith, 933 S.W.2d 450, 455 (Tenn. 1996); State v. Freeland, 451 S.W.3d 791, 815 (Tenn. 2014).

"The due process voluntariness test is distinct from Miranda."  State v. Davidson, 509 S.W.3d 156, 189 (Tenn. 2016) (citing Dickerson v. United States, 530 U.S. 428, 434-35 (2000); Mincey v. Arizona, 437 U.S. 385, 397-98 (1978)).  "[T]he essential inquiry under the voluntariness test is whether a suspect's will was overborne so as to render the confession a product of coercion."  Id. (citing Freeland, 451 S.W.3d at 815).  The voluntariness test requires this court to assess the psychological impact on the accused and to evaluate the legal significance of the accused's reaction.  Id. (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)).  When determining whether a confession was made voluntarily, this court must examine the totality of the circumstances, including the "characteristics of the accused and the details of the interrogation."  Id. (citing Dickerson, 530 U.S. at 434).  These circumstances include:

> "[T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured[,] intoxicated[,] or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep[,] or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse."

Climer, 400 S.W.3d at 568 (quoting State v. Huddleston, 924 S.W.2d 666, 671 (Tenn. 1996)).

Regarding Singer's claim that Officer Gibbs secretly recorded this confession, the pertinent recording shows that Officer Gibbs recorded Singer's confession with his cell phone at the hospital and that Singer, who was lucid and articulate at the time, was looking directly at the cell phone when the recording was made.  These facts clearly dispel Singer's claim that this recording was "secretly" made.  Accordingly, we conclude that nothing about the way that Singer's confession was recorded gives any indication that his confession was coerced.

- 12 -

As to Singer's claim that Officer Price's excessive use of force at the stop made his later confession to ingesting a marijuana joint involuntary, we fully agree with the trial court's findings that Singer was advised of his Miranda rights at the scene and that from the time of Singer's initial stop to the time Singer made the admission regarding consuming the marijuana, he was able to fully engage in conversation with all of the officers. Officer Gibbs specifically testified at trial that despite Singer's claim that he had received a back injury during the altercation with Officer Price, Singer was able to walk out of the hospital of his own accord before being booked at the jail. After reviewing the record, including the pertinent video recordings, we conclude that Singer has failed to establish that Officer Price used excessive force at the time of the stop or that Singer's alleged back injury rendered his Miranda waiver involuntary. Therefore, we fully agree with the trial court's holding that all of Singer's statements "were made willingly and voluntarily". Because Singer has failed to establish that a clear and unequivocal rule of law was breached, that a substantial right of his was adversely affected, or that consideration of the error was necessary to do substantial justice, he is not entitled to plain error relief on this issue. See Smith, 24 S.W.3d at 282.

**III. Challenges to his Arrest and Search.** Singer additionally contends that the trial court erred in denying his motion to suppress because his arrest was not supported by probable cause and the police did not have authority to search his person or his truck. Singer specifically claims that Officer Price used excessive force during his arrest and admitted he did not see narcotics in Singer's mouth or on his person. The State responds that the police had probable cause to arrest Singer because when Officer Price observed Singer committing a traffic violation and attempted to pull him over, Singer refused to immediately stop, disregarded the officer's commands to stop reaching for something in his center console, smelled of marijuana, and was physically combative with the officer as a crack pipe fell onto the ground in plain view. The State asserts that because the police had probable cause to arrest Singer, the officers validly searched Singer's person and his truck incident to his arrest. We conclude that Singer has waived plenary review of this issue and is not entitled to plain error relief.

Although not specifically raised by the State, Singer's claim that the trial court erred in denying his motion to suppress was not included in a motion for new trial. Because the record shows that Singer failed to raise this issue in a motion for new trial, we again conclude that Singer has waived this issue, absent plain error. See Tenn. R. App. P. 3(e); Tenn. R. App. P. 36(a); Smith, 24 S.W.3d at 282.

The proof presented at the suppression hearing and trial showed that Officer Price observed Singer driving in the rain without his headlights activated. Because Officer Price observed Singer committing a traffic violation pursuant to Code section 55-9-406, he had reasonable suspicion to stop him. Although Officer Price attempted to initiate a

- 13 -

traffic stop, Singer did not immediately pull over and continued to drive down the road and through a parking lot. As Singer continued to drive, Officer Price observed Singer lifting himself out of his seat and digging through the contents of his center console, which caused Officer Price to be concerned for his safety and led him to call for back-up. When Singer finally stopped his vehicle, Officer Price approached Singer's truck, and Singer continued to go through the contents of his center console, even though Officer Price told him to stop. Because Singer refused to comply with this command, Officer Price became concerned that Singer was looking for a weapon and ordered Singer out of his truck. When Singer refused to comply, Officer Price placed his arms around Singer and pulled him out of the truck. As he did so, a crack pipe fell to the ground, and Singer resisted, which resulted in a physical struggle between Officer Price and Singer that lasted several minutes. During this struggle, Officer Price realized that Singer was chewing on something, which he believed to be narcotics, and Singer refused to spit out whatever he was chewing out. Officer Price and Singer continued to struggle for a few minutes until other officers arrived on the scene and were able to help Officer Price arrest Singer.

We conclude that the evidence presented at the suppression hearing and trial overwhelmingly established that Officer Price and the other officers had probable cause to arrest Singer. See State v. Clayton, 535 S.W.3d 829, 849 (Tenn. 2017) ("Probable cause exists when at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." (citation and internal quotation marks omitted)); State v. Bishop, 431 S.W.3d 22, 41 (Tenn. 2014) ("[T]he strength of the evidence necessary to establish probable cause to arrest is significantly less than the strength of evidence necessary to find a defendant guilty beyond a reasonable doubt."). This evidence also established that the officers validly searched Singer's person and the interior of Singer's truck incident to Singer's arrest. See Arizona v. Gant, 556 U.S. 332, 351 (2009) ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."). Because Singer has failed to establish that a clear and unequivocal rule of law was breached, that a substantial right of his was adversely affected, or that consideration of the error was necessary to do substantial justice, he is not entitled to plain error relief. See Smith, 24 S.W.3d at 282.

**IV. Exculpatory Evidence.** Singer also contends that the State withheld exculpatory evidence by failing to preserve two packs of gauze wrapped in cellophane that he spit out during his arrest. The State counters that while Singer spit out these gauze packs, he did not spit out the green substance that smelled of marijuana, which was

- 14 -

never recovered, and that the State had no duty to preserve the gauze packs. We conclude that Singer has waived plenary review of this issue and is not entitled to plain error relief.

At trial, Singer never objected or asked for a continuance to address this alleged Brady violation, which precluded the trial court from making a ruling on this claim. Because Singer made no effort to address this issue at the trial court level and raised it for the first time on appeal, this issue is waived. See Tenn. R. App. P. 36(a). Moreover, Singer's claim that the State withheld exculpatory evidence was not included in a motion for new trial. Consequently, we again conclude that Singer has waived this issue, absent plain error. See Tenn. R. App. P. 3(e); Smith, 24 S.W.3d at 282.

In order to prove a Brady violation, the defendant must establish the following four elements: (1) that the defendant requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not); (2) that the State suppressed the information; (3) that the information was favorable to the accused; and (4) that the information was material. Johnson v. State, 38 S.W.3d 52, 56 (Tenn. 2001) (citing State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995); State v. Walker, 910 S.W.2d 381, 389 (Tenn. 1995)). The defendant has the burden of proving a Brady violation by a preponderance of the evidence. See Edgin, 902 S.W.2d at 389.

Information favorable to the accused, the third element, includes evidence that could exonerate the accused, corroborate the accused's position in asserting his innocence, or enable defense counsel to conduct further and possibly productive investigation regarding the fact that someone other than the defendant committed the charged crime. Johnson, 38 S.W.3d at 56 (citing State v. Marshall, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992)). It also includes evidence that corroborates the defendant's version of events, calls into question an important but not indispensable part of the State's version of the events, or challenges the credibility of a key State witness. Id. at 57 (citing Commonwealth v. Ellison, 379 N.E.2d 560, 571 (1978); Mazzan v. Warden, Ely State Prison, 993 P.2d 25, 37 (Nev. 2000)). As to the fourth element, we recognize that information is considered material when "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. (quoting Edgin, 902 S.W.2d at 390; Walker, 910 S.W.2d at 389; State v. Copeland, 983 S.W.2d 703, 706 (Tenn. Crim. App. 1998)).

Singer has failed to establish any of the four elements required to prove a Brady violation. Officer Price testified that Singer spit out two gauze packs rolled in cellophane. While he acknowledged that the gauze packs that ended up on the ground did not contain drugs, Officer Price asserted that Singer continued to chew on a green

- 15 -

substance that smelled of marijuana at the time he spit out the gauze packs . In addition, Officer Gibbs testified that while at the hospital, Singer continued to chew on something he refused to spit out and that Singer's tongue and mouth were green from this substance. Based on this evidence, the gauze packs were not obviously exculpatory. In addition, the State did not suppress the gauze packs; instead, the State merely chose not to collect the gauze packs because at the time Singer spit them out, they did not contain drugs. Finally, the gauze packs were not material because there is no reasonable probability that, had they been collected and given to the defense, the result of the proceeding would have been different. Because Singer has failed to establish that a clear and unequivocal rule of law was breached, that a substantial right of his was adversely affected, or that consideration of the error was necessary to do substantial justice, he is not entitled to plain error relief. See Smith, 24 S.W.3d at 282.

**V. Defective Indictment.** In addition, Singer contends that his indictment was defective and that the trial court was without jurisdiction to enter its judgments of conviction. He specifically references the count charging him with tampering with evidence and asserts that "nothing in the language of section 39-16-503(a) . . . remotely suggest[s] that the legislature intended to include 'substance' as an element" of the offense. Alternatively, Singer argues that the trial court was without jurisdiction to hear his criminal case because he had a pending civil lawsuit in federal court,[4] wherein he asserted that Officer Price used excessive force against him at the time of his arrest. The State responds that Singer is not entitled to relief because the indictment in this case provided Singer with knowledge of the accusations to which he was required to answer, furnished the court with an adequate basis for entry of a proper judgment, and protected Singer against double jeopardy. We agree with the State that Singer is not entitled to relief on this issue.

Although Singer did not raise his issue regarding the defective indictment in a motion for new trial, he was not required to do so because the remedy for a defective indictment is the dismissal of the indictment rather than a new trial. See Tenn. R. App. P. 3(e); State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994) ("The waiver provision of Rule 3(e) . . . does not apply when the issue, if found to be meritorious, would result in the dismissal of the prosecution against the accused."); State v. Duncan, 505 S.W.3d 480, 489 n.10 (Tenn. 2016) ("If the matter is considered jurisdictional and it is determined that the indictment does not give proper notice to the defendant, then the indictment must be dismissed."). We also recognize that Singer raised his claim of a defective indictment in his pro se pre-trial motions to dismiss and in his pro se "Motion in Arrest of Judgment" that was filed after his judgments of conviction were entered. See

---

[4] No documentation regarding this federal lawsuit was included in the appellate record.

Tenn. R. Crim. P. 12(b)(2)(B); Tenn. R. Crim. P. 34(a)(2). Accordingly, we will address this issue on its merits.

The United States Constitution and the Tennessee Constitution state that a defendant is entitled to knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tennessee Const. art. I, § 9. The Tennessee Supreme Court has stated that an indictment is valid if it contains sufficient information (1) to enable the defendant to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the defendant against double jeopardy. State v. Hammonds, 30 S.W.3d 294, 299 (Tenn. 2000) (citing Hill, 954 S.W.2d at 727). Moreover, pursuant to Tennessee Code Annotated section 40-13-202, the indictment must

> state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner so as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.

Tenn. Code Ann. § 40-13-202; see Hammonds, 30 S.W.3d at 300 (stating that "indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements").

Because challenges to the validity of an indictment involve issues of law, we review them de novo. State v. Smith, 492 S.W.3d 224, 239 (Tenn. 2016) (citing Hill, 954 S.W.2d at 727). "The provisions of the criminal code are to be 'construed according to the fair import of their terms.'" State v. Majors, 318 S.W.3d 850, 859 (Tenn. 2010) (citing Tenn. Code Ann. § 39-11-104 (2006)). When interpreting a statute, "we must ascertain and give full effect to the General Assembly's intent." State v. Smith, 436 S.W.3d 751, 762 (Tenn. 2014) (citing Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 309 (Tenn. 2008)). The General Assembly's intent must be carried out "without unduly expanding or restricting the language of the statute beyond the legislature's intended scope." Id. (citing Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc., 978 S.W.2d 91, 93 (Tenn. 1998)). "When the statutory language is clear and unambiguous, we apply the plain meaning of the statute." Id. However, where the language is ambiguous, we must look to the "broader statutory scheme, the history of the legislation, or other sources to discern its meaning." State v. Casper, 297 S.W.3d 676, 683 (Tenn. 2009).

Here, Singer was charged with tampering with evidence, which provides, in pertinent part:

- 17 -

(a) It is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to:

(1) Alter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding[.]

Tenn. Code Ann. § 39-16-503 (emphasis added).

Singer was specifically indicted for this offense as follows:

The Grand Jurors of Rutherford County, Tennessee, duly impaneled and sworn upon their oath present that in Rutherford County, Tennessee and before a finding of this indictment during the month of October 2015 Leonard Singer did unlawfully and feloniously alter, destroy, or conceal any substance or thing, to wit: MARIJUANA with the intent to impair its availability as evidence in an investigation, knowing that an investigation was in progress, in violation of T.C.A. 39-16-503 and against the peace and dignity of the State of Tennessee.

Code section 39-16-503, which criminalizes tampering with evidence, specifically includes "any record, document, or thing" in its definition of what a person may not alter, destroy, or conceal. See Tenn. Code Ann. § 39-16-503(a)(1). The Tennessee Supreme Court applied a "broad, generic construction" to the word "thing" as it is used in Code section 39-16-503(a)(1). Majors, 318 S.W.3d at 859; State v. Hawkins, 406 S.W.3d 121, 132 (Tenn. 2013). The court held that "thing," as used in this statute, refers to "an object or entity not precisely designated and perhaps not even capable of being designated." Majors, 318 S.W.3d at 860. In addition, there is no requirement that the State "identify exactly what 'thing' was tampered with." Id. at 859. As a result, "the State must show only that the defendant, aware of an imminent police investigation, chose to '[a]lter, destroy, or conceal' something with the intent to deprive the police of its use as evidence in that investigation." State v. Harvell, 415 S.W.3d 853, 861-62 (Tenn. Crim. App. 2010) (quoting Tenn. Code Ann. § 39-16-503(a)(1)). "It does not matter for purposes of the statute whether the substance at issue was an illegal narcotic, a legal chemical precursor to such a narcotic, the ashes of burned currency or counterfeit currency, or, for that matter, mere flour or baking soda." Id. at 862. Because the term "substance" certainly falls within the definition provided by the Tennessee Supreme Court for "thing" as used in Code section 39-16-503, Singer is not entitled to relief on this issue.

- 18 -

To the extent that Singer argues that the evidence is insufficient to sustain his conviction for tampering with evidence, we conclude that based on the evidence presented at trial, a rational jury could have found that Singer destroyed and concealed whatever was in his mouth in order to prevent the police from uncovering it as a part of the pending investigation against him. Accordingly, the evidence is sufficient to sustain Singer's conviction pursuant to Code section 39-16-503.

As to Singer's broader claim that his indictment was defective, which deprived the trial court of jurisdiction, we note the indictment in this case clearly charged Singer with the relevant offenses of tampering with evidence, simple possession of cocaine, and possession of drug paraphernalia. These charges contained facts constituting the offense in ordinary and concise language and identified the applicable statute criminalizing each offense. See Tenn. Code Ann. § 40-13-202. In addition, the indictment in this case (1) enabled Singer to know the accusations to which he was required to answer; (2) furnished the court with an adequate basis for entry of a proper judgment, and (3) protected Singer against double jeopardy. See Hammonds, 30 S.W.3d at 299 (citing Hill, 954 S.W.2d at 727). Consequently, we conclude that the indictment in this case achieved the overriding purpose of notice to Singer of the charged offenses and satisfied the constitutional and statutory requirements. See id. at 300.

Finally, although Singer claims that the trial court was without jurisdiction in his criminal case because he had a pending civil lawsuit in federal court alleging a claim that Officer Price used excessive force during the arrest, Singer has waived this issue by failing to provide any authority supporting this claim. See Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7). In addition, Singer has also waived this issue by failing to include any documentation regarding the existence of this federal suit. We reiterate that the appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). "Where . . . the record is incomplete, and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which a party relies, this Court is precluded from considering the issue." State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1998) (citing State v. Groseclose, 615 S.W.2d 142, 147 (Tenn. 1981); State v. Jones, 623 S.W.2d 129, 131 (Tenn. Crim. App. 1981)). For all these reasons, we conclude that Singer is not entitled to relief.

**VI.  Conspiracy to Fabricate Governmental Documents.** Singer additionally argues that the police, his attorneys, the prosecutors, and the trial judge conspired against him by making materially false statements and representations and by concealing and fabricating government documents for the purpose of harassing him. He specifically claims that Officer Price lied about the information contained in his affidavit of

complaint; that the prosecutors, his attorneys, and the trial court utilized the false affidavit of complaint and the defective indictment during his suppression hearing and trial; and that the police, his attorneys, and the prosecutors suppressed exculpatory evidence. Singer asserts that he filed a "civil rights action under 42 U.S.C. 1983" because of Officer Price's "use of force" during his arrest and because the prosecutors used a defective indictment to charge him. We conclude that Singer has waived plenary review of this issue and is not entitled to plain error review.

While the record does show that Singer made several unwarranted complaints about the attorneys who represented him, it does not show that Singer ever filed a motion to recuse the trial judge or prosecutor in his case based on these allegations. See Tenn. R. App. P. 36(a). In addition, Singer's claim that the police, his attorneys, the prosecutors, and the trial judge conspired against him was not included in a motion for new trial. Therefore, we once again conclude that Singer has waived this issue, absent plain error. See Tenn. R. App. P. 3(e); Smith, 24 S.W.3d at 282.

We reiterate that "[i]t is the accused's burden to persuade an appellate court that the trial court committed plain error." Bledsoe, 226 S.W.3d at 355. We have already held that Singer's indictment was not defective. In addition, Singer has failed to present any evidence to support his claim that the aforementioned parties conspired against him by making materially false statements and representations and by concealing and fabricating government documents. Because Singer has failed to establish that a clear and unequivocal rule of law was breached, that a substantial right of his was adversely affected, or that consideration of the error was necessary to do substantial justice, he is not entitled to plain error relief. See Smith, 24 S.W.3d at 282.

**VII. Misconduct of Parole Board.** Lastly, Singer contends that Kayla Young, an employee of the Tennessee Board of Probation and Parole, violated Code section 40-35-207 when she failed to conduct an adequate investigation before submitting her Pre-Sentence Investigation Report to the trial court. Singer claims that had Young conducted a proper investigation, she would have discovered that prosecutors charged him under a defective indictment, which was the subject of his federal civil lawsuit. Singer also appears to contend that Tennessee Board of Probation and Parole violated his due process rights when it failed to comply with Code section 40-31-103, which requires all courts, departments, agencies, officers and employees of this state and its political subdivisions to enforce the Interstate Compact on Detainers. He claims that the Tennessee parole board failed to conduct a prompt informal inquiry into his arrest to determine if there were reasonable grounds to believe that he had violated his parole from his sentence in Texas and failed to appoint him counsel and to allow him to confront and cross-examine witnesses at his probable cause hearing. The State responds that Singer's claim is not properly before this court because this court lacks territorial jurisdiction to review

Singer's complaints regarding parole proceedings occurring in another state. We conclude that Singer is not entitled to relief.

We have already held that Singer's indictment was not defective. Therefore, we conclude that Singer is not entitled to relief on his claim that Kayla Young did not discover his defective indictment because she allegedly failed to conduct a proper investigation into his case when preparing her pre-sentence investigation report.

As to Singer's claim that the Tennessee Board of Probation and Parole violated his due process rights when it failed to comply with Code section 40-31-103 regarding the Interstate Compact on Detainers, we note that any issue regarding an agency's failure to comply with the Interstate Compact on Detainers is not one of the enumerated actions from which a defendant may appeal as of right under Rule 3(b) of the Tennessee Rules of Appellate Procedure. Rule 3(b) provides:

> **Availability of Appeal as of Right by Defendant in Criminal Actions.** In criminal actions an appeal as of right by a defendant lies from any judgment of conviction entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) on a plea of not guilty; and (2) on a plea of guilty or nolo contendere, if the defendant entered into a plea agreement but explicitly reserved the right to appeal a certified question of law dispositive of the case pursuant to and in compliance with the requirements of Rule 37(b)(2)(i) or (iv) of the Tennessee Rules of Criminal Procedure, or if the defendant seeks review of the sentence and there was no plea agreement concerning the sentence, or if the issues presented for review were not waived as a matter of law by the plea of guilty or nolo contendere and if such issues are apparent from the record of the proceedings already had. The defendant may also appeal as of right from an order denying or revoking probation, and from a final judgment in a criminal contempt, habeas corpus, extradition, or post-conviction proceeding.

Tenn. R. App. P. 3(b) (emphases added). Here, Singer's issue does not relate to "any judgment of conviction entered by a trial court" or any other enumerated actions from which a defendant may appeal as of right under Rule 3(b); instead, Singer's claim appears to be a constitutional challenge to the Tennessee Board of Probation and Parole's alleged failure to abide by the Interstate Compact on Detainers. Given this interpretation of the issue, Singer is not entitled to relief. Finally, to the extent that Singer's issue relates to the determination that his convictions in this case violated his parole in Texas, we conclude that this court lacks territorial jurisdiction to adjudicate this issue. In order for this court to exercise judicial power to hear and determine a case, we must have

- 21 -

territorial jurisdiction. State v. Legg, 9 S.W.3d 111, 114 (Tenn. 1999). Because the Tennessee Court of Criminal Appeals does not have the power to hear issues regarding parole violations for sentences imposed in Texas, we agree with the State that this claim is not properly before the court.

## CONCLUSION

Based on the aforementioned authorities and reasoning, we affirm the judgments of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE